Twila **PROVENZANO** and John Provenzano, Individually, and as Natural Parents and Next Best Friends of Christopher Provenzano; and Twila Provenzano and John Provenzano as Parents and Next Best Friends of Isaac John Provenzano, Jenny Marie Provenzano, and Crystal Dawn Provenzano, Appellants,

v.

**WETRICH, McKEOWN AND HAAS, P.C.,** a professional corporation, and David W. Wetrich, an individual, Appellees.

No. 90–979.

Court of Appeals of Iowa.

Dec. 31, 1991.

Marc A. Humphrey of Humphrey & Haas, P.C., Des Moines, and Scott Campbell, Oskaloosa, for appellants.

John D. Hilmes of Duncan, Jones, Riley & Finley, P.C., Des Moines, for appellees.

Heard by DONIELSON, P.J., and HAYDEN and SACKETT, JJ.

DONIELSON, Presiding Judge.

The parents of Christopher Provenzano brought this medical malpractice action against Dr. David W. Wetrich, an obstetrician, and his professional corporation, alleging that Dr. Wetrich was negligent in managing the twin pregnancy of Twila Provenzano. When Twila gave birth to her twins, one was stillborn; the other, Christopher, was born with a significant brain injury. Plaintiffs alleged that Dr. Wetrich was negligent in failing to properly monitor the pregnancy. They allege that Dr. Wetrich did not conduct proper testing to determine whether the stillborn twin, Jesse, had experienced complications and had died in utero. The plaintiffs assert that due to this failure in testing, the necessary steps to immediately deliver the surviving twin were not taken. As a result, Christopher developed a brain injury caused, in utero, by disseminated intravascular coagulation (DIC). DIC is the phenomenon of small blood clots flowing into the living twin's blood stream from the deceased twin.

The defendants contend Dr. Wetrich was not negligent. They assert that the plaintiffs' opinions on causation are unsupported by clinical facts, poorly understood, without support in the literature, and presented by witnesses with insufficient experience.

The action was filed on July 20, 1987. Pursuant to Iowa Code section 668.11 (1989), the plaintiffs filed a Designation of Expert Witnesses on January 21, 1988, listing one obstetrical expert, Dr. Darryl

Townsend. Iowa Code section 668.11 provides that the plaintiff will make such a designation within 180 days of the date of the defendant's answer. It further provides that the defendant has 90 days after the plaintiff's designation to designate his or her own experts. The defendant filed his original designation of experts in a timely manner. The designation included Dr. Harry Farb, a perinatologist; Dr. Grant Paulsen, an obstetrician; and Dr. James Kelso, another obstetrician.

Following their discovery deposition of the defendant, the plaintiffs conducted additional medical research. Based on their findings, the plaintiffs requested that defendant's counsel, at that time Attorney Tom Finley, allow them to designate another obstetrical expert. The plaintiffs explained that they would file a motion to add additional experts if the parties were unable to agree. However, the parties did come to an agreement. Counsel stipulated that both parties could add one additional expert.

The plaintiffs designated another obstetrical expert, Dr. Stanley Warner. On the 24th and 25th of January 1989, the defendant deposed the plaintiffs' two experts. It was not until September 8, 1989, that the defendant supplemented his designation of experts to include *two* more witnesses. The defendant designated Dr. Lawrence Brown, a pediatric neurologist; and Dr. Terrance Briggs, an obstetrician. Despite the original agreement between counsel limiting the parties to one additional expert each, the plaintiffs did not challenge the defendant's designation of two additional experts.

However, Attorney Jack Hilmes replaced Tom Finley as defendant's counsel, and sixty-two days before trial, the defendant filed answers to interrogatories informing the plaintiffs regarding the subject matter of the defense experts' expected testimony. In those answers, the defendant had also designated *seven* new experts. The plaintiffs expressed that no objection would be made to three of these seven additional experts; Dr. David Wetrich, Dr. Marc Hines, and Dr. Jay Heitsman. These three

had all been integrally involved in the care of Twila and Christopher Provenzano, and their depositions had already been taken. Nevertheless, of the seven additional experts, four had never before been mentioned; Dr. Joanne Benda, an obstetrician and pathologist; Dr. C. Maureen Sander, a pathologist; Dr. Carl Weiner, an obstetrician; and Thomas Falhaber, a structured annuity specialist. Accordingly, the plaintiffs filed a motion to exclude, requesting that these four experts be excluded.

Following a phone hearing on March 5, 1990, twenty-two days before trial, Judge Collett ruled on the plaintiffs' motion. The court granted the plaintiffs' motion to exclude Doctors Benda, Sander, and Weiner based on their untimely designation as experts under Iowa Code section 668.11. However, the court concluded that Thomas Falhaber, the structured annuity specialist, fell outside the scope of section 668.11 and, therefore, he would be allowed to testify.

On March 26, 1990, the day before trial, counsel for the parties appeared before the trial court, Judge Jenkins, to address certain pretrial matters. Counsel for both parties informed the court of what had occurred during preparation of the claim for trial. A portion of that discussion occurred as follows:

MR. HILMES [Defendant's Counsel]: Then as I've explained to Marc [Humphrey] and explained to Judge Collett when I got the file from [Tom] Finley on a lateral, I not only noticed there were two people that had been involved in this case who hadn't been named as experts that I immediately named, but noticed that other areas of expertise should be brought to this case, and particularly I think it turned out to be pathology expertise.

There was some time delay in getting some slides and such, which got me up until, what, December or January before I told Marc who these experts were. And one of the reasons I told him who they were is because he filed an interrogatory at that point asking me who they are. Judge Collett struck those on the cases of Rule 668.11.

That takes me back to my original premises. If you wanted to be real comfortable with the enforcement of 668.11, you would say, "Lawyers, you can't make side agreements." On the other hand, the lawyers have made a side agreement, and I think we're willing to stick with it.

THE COURT: Are you willing to stick with Collett's restriction of your experts?

MR. HILMES: Well, there's nothing I can do about it at this point.

THE COURT: Yeah, you can. Yeah, you can. Because I can change it. If you're uncomfortable with it, and if I'm uncomfortable with it, you bet I can. I can and I will. Because it seems to me that you can't require a literal interpretation of Section 668.11 on the one hand and keep the defendant from bringing in three experts, and completely ignore it on the other hand to allow the plaintiff to bring in experts that were not designated. That's the point of my discomforture [sic].

Now, if you, as counsel for the defendant, are not uncomfortable with Collett's ruling, then we can go ahead with it.

MR. HILMES: Well—

THE COURT: Because you know a lot more about it than I do.

MR. HILMES: I would have liked to have had a pathologist involved in this case, and that's why I designated two. . . . However, because of Judge Collett's ruling, to be quite frank, and because of the lack of qualification of the experts on the other side to deal with that area, I've prepared myself and my case to go forward with what it has.

THE COURT: All right. That's—

MR. HILMES: I'm not saying I agree with Collett's ruling, mind you. I would like to have them. But I guess I understand that I've got some statutory obligation. I guess what I'm saying and discussing with the Court is that I can see how the Court would be uncomfortable with a literal interpretation of the statute after there had been some relaxation by the lawyers.

THE COURT: That's my whole point. I can certainly find, without the slightest bit of difficulty, that there's been a waiver of the provisions of Section 668.11 by the plaintiffs, and that the defendant is entitled to bring those three additional witnesses if the defendant wants to. But that's entirely up to you.

\*    \*    \*    \*    \*    \*

MR. HILMES: Taking—

THE COURT: And I think it's already on the record enough now that some reviewing court can understand what we're doing, too.

MR. HILMES: Taking the opening which the Court has given me at this opportunity, I would simply move for the Court to reconsider Judge Collett's order to allow me to call one expert, that being Jo Benda, M.D., from Iowa City, who is a pathologist, by the way.

The trial court granted the defendant's motion, amended the prior order, and allowed Dr. Benda to testify at trial. The ruling was made the day before trial, after the discovery depositions of the remaining defense experts had been taken, after all witnesses had been subpoenaed, after the plaintiffs' experts' transportation arrangements had been made and plane tickets had been purchased, after the theories of the case had been set forth by both sides, after arguments in response to these theories had been formulated, after opening statements had been prepared, and after examination checklists had been prepared.

While the plaintiffs concede that the trial court suggested it would not force the parties to try the case if they were not ready, the plaintiffs proceeded to begin the trial the next day, on March 27, 1990, as originally scheduled. Dr. Benda testified, and on April 19, 1990, the jury returned a verdict for the defendant.

The plaintiffs appeal. They assert as their primary argument that the trial court erred in amending the prior order on the eve of trial.

■ Our standard of review is for the correction of errors of law. Iowa R.App.P. 4. Because the trial court possesses broad

discretion in ruling on matters concerning Iowa Code section 668.11, *Donovan v. State*, 445 N.W.2d 763, 766 (Iowa 1989), we review for an abuse of discretion. In order to show an abuse of discretion, one generally must show that the court exercised its discretion "on grounds or for reasons clearly untenable or to an extent clearly unreasonable." *State v. Blackwell*, 238 N.W.2d 131, 138 (Iowa 1976) (quoting *Weeks v. Burnor*, 132 Vt. 603, 326 A.2d 138, 140 (1974)). We hold the trial court abused its discretion in amending the prior order. Because we find the trial court's ruling to be reversible error, we need not address the plaintiffs' other arguments.

■ Iowa Code section 668.11(1)(b) (1991) provides that the defendant in a professional liability action must designate his or her expert witnesses within ninety days after the plaintiff has done so. The defendant in the case at bar did not designate Dr. Benda as an expert within that statutorily prescribed time frame.

Section 668.11(2) provides that if a party fails to timely designate his or her expert, "the expert shall be prohibited from testifying in the action unless leave for the expert's testimony is given by the court for good cause shown."

While section 668.11 does not define the term "good cause", the supreme court in *Donovan v. State*, 445 N.W.2d 763 (Iowa 1989), borrowed a definition from Iowa Rule of Civil Procedure 236. *Id.* at 765–66. The supreme court has defined good cause, for the purposes of vacating a default judgment, as a

> sound, effective, truthful reason, something more than an excuse, a plea, apology, extenuation, or some justification for the resulting effect. The movant must show that his failure ... was not due to his negligence or want of ordinary care or attention, or to his carelessness or inattention. He must show affirmatively he did intend to defend and took steps to do so, but because of some misunderstanding, accident, mistake or excusable neglect failed to do so. Defaults will not be vacated where the movant has ig-

nored plain mandates in the rules with ample opportunity to abide by them.

*See Donovan*, 445 N.W.2d at 766 (citing *Dealers Warehouse Co. v. Wahl & Associates*, 216 N.W.2d 391, 394–95 (Iowa 1974)).

■ The defendant failed to show good cause for his delay in designating Dr. Benda. The plaintiffs did not enter into an agreement with the defendant to allow Dr. Benda to testify. Rather, the agreement between counsel allowed both parties to designate one additional expert. The defendant had already taken advantage of that agreement by designating two additional experts well before Dr. Benda was designated.

Neither is there any support for the proposition that the plaintiffs somehow waived their right to enforce the provisions of section 668.11. They certainly waived their right to object to the untimely designation of the expert covered by the agreement, and arguably, they waived their right to object to the second expert due to their failure to timely file a motion to exclude. However, to conclude plaintiffs' waiver extends to all experts that the defendant may wish to designate is clearly unreasonable. Such a holding would effectively undermine all amicable extrajudicial agreements between counsel regarding like issues. This would be an unwise policy.

■ We find the trial court abused its discretion in allowing Dr. Benda to testify. We also find that the plaintiffs were prejudiced by the error. The trial court's ruling, made as it was on the eve of trial, placed the plaintiffs in a lose-lose situation. They were forced to choose between continuing the trial at great expense or proceeding without adequate time to prepare for Dr. Benda's testimony. The fact that the trial court provided that the plaintiffs be given an opportunity to depose the expert does very little to alleviate the obvious prejudicial consequences of the thrust of the court's order.

We reverse the trial court and remand the case for a new trial.

The costs of this appeal are taxed to appellees.

For all the reasons stated, the judgment of the district court is reversed and remanded.

REVERSED AND REMANDED.

SCHLEGEL, J., takes no part.