# IN THE COURT OF APPEALS OF IOWA

No. 17-0971
Filed October 10, 2018


**MICHELLE TAMAYO,**

      Plaintiff-Appellant,

**vs.**

**CHARLES A. DEBRAH, M.D., an individual, MERCY HEALTH SERVICES - IOWA, CORPORATION d/b/a MERCY MEDICAL CENTER - NORTH IOWA and d/b/a MERCY HOME CARE - NORTH, IOWA, Iowa Corporations,**

      Defendants-Appellees.

_____


Appeal from the Iowa District Court for Cerro Gordo County, Christopher Foy, Judge.


Plaintiff appeals the district court's ruling granting summary judgment in favor of defendants on a medical malpractice action. **AFFIRMED.**


Marc A. Humphrey of Humphrey Law Firm, PC, Des Moines, for appellant.

Connie M. Alt and Desirée A. Kilburg of Shuttleworth & Ingersoll, PLC, Cedar Rapids, for appellees.


Heard by Vaitheswaran, P.J., and Mullins and McDonald, JJ.

**VAITHESWARAN, Presiding Judge.**

Michelle Tamayo contracted a deep-tissue infection following surgery. She filed a medical malpractice action against Dr. Charles Debrah, who performed the surgery, as well as Mercy Health Services–Iowa Corporation, d/b/a Mercy Medical Center–North Iowa. The district court (1) struck her expert witnesses for failure to timely designate them and (2) granted summary judgment in favor of the defendants. On appeal, Tamayo challenges both rulings.

## I.     *Ruling Striking Experts*

Iowa Code section 668.11 (2015), governing the designation of experts in a medical malpractice action, states:

> 1. A party in a professional liability case brought against a licensed professional pursuant to this chapter who intends to call an expert witness of their own selection, shall certify to the court and all other parties the expert's name, qualifications and the purpose for calling the expert within the following time period:
>     *a. The plaintiff within one hundred eighty days of the defendant's answer unless the court for good cause not ex parte extends the time of disclosure.*
>         . . . .
>     2. *If a party fails to disclose an expert pursuant to subsection 1 or does not make the expert available for discovery, the expert shall be prohibited from testifying in the action unless leave for the expert's testimony is given by the court for good cause shown.*
>         . . . .

(Emphasis added.) "[S]ection 668.11 requires substantial compliance." *Hantsbarger v. Coffin*, 501 N.W.2d 501, 504 (Iowa 1993). The provision "is designed to require a plaintiff to have his or her proof prepared at an early stage in the litigation in order that the professional does not have to spend time, effort and expense in defending a frivolous action." *Id.*

The 180-day deadline set forth in section 668.11 was slated to expire at the end of November 2015. At a scheduling conference, the defendants agreed Tamayo could delay her certification of expert witnesses until December 31, 2015. The district court approved the agreement. Later, the defendants agreed to extend the deadline even further, to January 31, 2016. Tamayo missed the extended deadline. She did not file a designation of expert witnesses until March 22, 2016, and she did not file the expert witness disclosures required by Iowa Rule of Civil Procedure 1.500(2)(b) until April 6, 2016.

Tamayo concedes she failed to comply with the section 668.11 deadline and the agreed-upon extensions. She attempts to justify her noncompliance by arguing the defendants waived the deadline. At oral argument, Tamayo's attorney agreed he lacked precedent to support the waiver argument. In fact, precedent supports a contrary proposition. *See Provenzano v. Wetrich*, *McKeown & Haas*, *P.C.*, 481 N.W.2d 536, 540 (Iowa Ct. App. 1991).

In *Provenzano*, the defense failed to designate an expert within the section 668.11 deadline or within an extended deadline agreed to by the plaintiff's attorney. This court stated:

> The plaintiffs did not enter into an agreement with the defendant to allow [the expert] to testify. Rather, the agreement between counsel allowed both parties to designate one additional expert. The defendant had already taken advantage of that agreement by designating two additional experts well before [this expert] was designated.
> Neither is there any support for the proposition that the plaintiffs somehow waived their right to enforce the provisions of section 668.11. They certainly waived their right to object to the untimely designation of the expert covered by the agreement, and arguably, they waived their right to object to the second expert due to their failure to timely file a motion to exclude. However, to conclude plaintiffs' waiver extends to all experts that the defendant

> may wish to designate is clearly unreasonable. Such a holding would effectively undermine all amicable extrajudicial agreements between counsel regarding like issues. This would be an unwise policy.

*Id.*; *cf. Nelson v. Mercy Health Servs.–Iowa*, No. 13-0361, 2014 WL 69666, at *7 (Iowa Ct. App. Jan. 9, 2014) ("[W]e do not view the informal agreement between [Nelson's attorney] and defense counsel as a panacea for Nelson. The district court took that agreement into account when it originally extended the deadline for three months. The earlier agreement cannot be resurrected to excuse Nelson's additional months of non-compliance.").

As in *Provenzano*, our record discloses no waiver of the statutory deadline. Defense counsel simply agreed to extend the deadline to dates certain. An email from defense counsel asking Tamayo's attorney if the extended time frame was sufficient reflected professional courtesy towards a long-time colleague rather than an intent to dispense with the expert-designation deadline. In the absence of a waiver of the deadline, the only remaining question is whether there was good cause for the late disclosures. *See* Iowa Code § 668.11(2).

In determining whether good cause exists for excusing compliance with the section 668.11 time limit, courts have considered: (1) the seriousness of the deviation from the timeline; (2) the prejudice to the defendant; and (3) defense counsel's actions. *See Hill v. McCartney*, 590 N.W.2d 52, 55 (Iowa Ct. App. 1998) (citing *Hantsbarger*, 501 N.W.2d at 505-06). "Good cause under section 668.11 must be 'more than an excuse, a plea, apology, extenuation, or some justification for the resulting effect.'" *Thomas v. Fellows*, 456 N.W.2d 170, 172 (Iowa 1990) (citation omitted).

In his resistance to the defense motion to strike the expert witnesses, Tamayo's attorney stated the deadline "slipped through the cracks." The statement was nothing more than an excuse, plea, or apology. As the district court stated:

> Counsel for Plaintiff candidly acknowledges that his failure to certify expert witnesses in a timely manner was the result of inadvertence and oversight. Counsel simply missed the deadline because he failed to follow his established practice for noting important case requirements on his office calendar. This constitutes a lack of ordinary care and attention which falls outside the definition of good cause given by the Supreme Court . . . .

Based on Tamayo's concession, the district court did not "abuse its broad discretion by" finding an absence of good cause and by striking her expert witnesses. *See Cox. v. Jones*, 470 N.W.2d 23, 25 (Iowa 1991).

The defendants argue our analysis could end here because, in their view, the *Hantsbarger* factors are not mandatory considerations in a good cause analysis. True, the considerations in *Hantsbarger* flowed from the record in that case. But we have cited the considerations as relevant factors in a section 668.11 good-cause analysis. *See, e.g.*, *Hill*, 590 N.W.2d at 55. Accordingly, we will apply the *Hantsbarger* factors.

The first factor—deviation from the deadline—was significant; Tamayo waited almost two months to designate her experts and waited even longer to provide a complete summary of their opinions. Although Tamayo focuses on her retention of experts months before the original statutory deadline, she failed to transmit their names to the defense before the deadline. This omission and the two-month delay in filing the designation distinguish her case from the facts in *Hantsbarger*, where the plaintiff disclosed the names of the experts before the

statutory deadline and the complete designation "was only delinquent for about one week." 501 N.W.2d at 505.

Tamayo seizes on the second factor—prejudice. She argues the defendants were hard-pressed to show prejudice because trial was not imminent. But lack of prejudice "is only one factor" and, "by itself, does not excuse the . . . late designation." *Nedved v. Welch*, 585 N.W.2d 238, 241 (Iowa 1998); *see also Morales v. Miller*, No. 09-1717, 2011 WL 222527, at *6 (Iowa Ct. App. Jan. 20, 2011) (agreeing "the prejudice from allowing [the physician] to serve as an expert would not have been overwhelming, because the case was not scheduled to be tried" for some time, but finding no abuse of discretion in district court's denial of a belated request to designate an expert). At the end of the day, "we cannot ignore the legislature's intent to provide professionals relief from nuisance suits and to avoid the costs of extended litigation in frivolous cases." *Hantsbarger*, 501 N.W.2d at 504-05. We conclude the defendants sustained some prejudice by virtue of the delay in gleaning the merits of Tamayo's case.

The third factor—defense counsel's actions—also does not favor a finding of good cause. Contrary to Tamayo's assertion, the defense had no obligation to remind Tamayo of the deadline before moving to strike her experts. While Iowa Rule of Civil Procedure 1.501(3) requires conferral among counsel to resolve discovery disputes, this case does not involve a discovery dispute but a missed statutory deadline.

The *Hantsbarger* factors do not support a finding of good cause for the delayed expert-witness disclosures. As the district court stated:

[The] purpose [of section 668.11] is not offended when plaintiff seeks a one or two-week extension of the certification deadline (such as in the *Hantsbarger* case) or where the defendant agrees to a longer extension. Here, however, Plaintiff was already given two extensions of the statutory deadline, but still was almost two months late in certifying her expert witnesses. Plaintiff offers nothing more than the inadvertence of counsel as a reason for the delay. Granting Plaintiff yet another extension of the certification deadline would be contrary to the purpose of Section 668.11(1) and the Court declines to do.

We conclude the district court did not abuse its discretion in striking the expert witnesses. *See Hantsbarger*, 501 N.W.2d at 505 (setting forth standard of review).

## II.    Summary Judgment Ruling

Tamayo contends the district court erred in granting the defendants' motion for summary judgment. We review a summary judgment ruling for correction of errors at law. *Andersen v. Khanna*, 913 N.W.2d 526, 535 (Iowa 2018). "[W]e examine the record before the district court to determine whether any material fact is in dispute, and if not, whether the district court correctly applied the law." *Id.*

"Specific negligence of a physician can be established through expert testimony showing a standard of care and its breach, or through evidence showing a lack of care so obvious as to be within the comprehension of a layperson such as an injury to a part of the body not being treated." *Forsmark v. State*, 349 N.W.2d 763, 768 (Iowa 1984). "[T]he issue is whether, in view of the fact that [the plaintiff] is precluded from introducing expert evidence, there is a genuine issue of material fact." *Donovan v. State*, 445 N.W.2d 763, 766 (Iowa 1989).

As in *Donovan*, Tamayo's petition establishes the need for expert evidence. *Id.* at 767. Tamayo alleged in part that Dr. Debrah failed to timely diagnose "the possibility that a necrotizing fasciitis condition could be developing and that any

delay in diagnosis and medical treatment could be catastrophic." The allegation raises "highly technical questions of diagnoses and causation which lie beyond the understanding of a layperson." *Id.* at 766. Experts were required.

Anticipating this conclusion, Tamayo asserts Dr. Debrah made admissions establishing his negligence. *See Oswald v. LeGrand*, 453 N.W.2d 634, 640 (Iowa 1990). She points to his deposition testimony that there was "a slightly higher risk of infection and higher risk of complications . . . [i]ncluding infections" in a patient of Tamayo's size, height, and weight. She also directs us to his discussion of the incision he made through multiple layers of tissue, his ultimate diagnosis of necrotizing fasciitis, and his knowledge of her post-surgical symptoms.

Dr. Debrah's testimony on these subjects did not raise a genuine issue of material fact on negligence or causation. Addressing the likelihood of contracting an infection, Dr. Debrah stated "in the process of doing *any* surgery, even though you scrub in and use sterile technique, there can be exposure to bacteria." (Emphasis added.) He stated the degree of pain associated with necrotizing fasciitis could be "varied" and, although Tamayo experienced post-surgical pain, she lacked symptoms other than pain that would have warranted an early diagnosis of necrotizing fasciitis. We conclude the district court did not err in granting the defendants' motion for summary judgment.

**AFFIRMED.**