**Lois A. GRAEVE, Appellee,**

v.

**Eugene J. CHERNY and Heartland Plastic Surgery, P.C., Appellants.**

**No. 97–653.**

Supreme Court of Iowa.

July 1, 1998.

Susanna M. Albaugh of Dickinson, Mackaman, Tyler & Hagen, P.C., Des Moines, for appellants.

Allan H. Rauch, Des Moines, for appellee.

Considered by HARRIS, P.J., and LARSON, CARTER, NEUMAN, and TERNUS, JJ.

LARSON, Justice.

This is an appeal by the defendants in a medical malpractice case. The issue is whether the general rules for establishing a prima facie case of malpractice apply in small claims trials. The district associate judge, and the district court, concluded that the rules do not apply in the relatively informal proceedings of small claims court. We granted the defendants' application for discretionary review and now reverse and remand.

### I. *Facts and Judicial Proceedings.*

The plaintiff, Lois Graeve, had a facelift and platysmoplasty. A platysmoplasty is a liposuctioning of the neck area and the placement of permanent sutures to correct a condition known as "turkey gobbler neck." The surgery was performed in November 1994 by

Dr. Eugene Cherny at the office of Heartland Plastic Surgery, P.C.

In January 1995 Graeve began to notice a "little thing down here on [her] neck," and she mentioned it to the doctor later that month. The doctor thought it was a skin lesion and told her that he would watch it closely. In March 1995 Graeve returned, and Dr. Cherny found no sign of infection or abscess. Graeve did not contact Dr. Cherny after that appointment to report any further problems. On June 21, 1995, she visited her dermatologist, Dr. Ceilley, who removed one of the permanent sutures, which by that time had caused an abscess.

Graeve sued Dr. Cherny and Heartland in small claims court. Graeve testified in her own behalf, but she did not present any expert testimony as to the doctor's standard of care. The defendants presented evidence from a plastic surgeon that Cherny's care of Graeve met the applicable standard of care. The doctor testified:

If you have a small lump in a post-liposuction patient, I don't know of anybody who would be interested in biopsying something like that in the first three or four months after surgery. I don't think that would be standard of care at all.

Dr. Cherny, the operating doctor, also testified that his care of the patient was appropriate based on her condition at the time he saw her.

■ Expert testimony is ordinarily required in medical malpractice cases in order to establish a prima facie case of negligence. *See* Iowa Code § 147.139 (1997); *Kennis v. Mercy Hosp. Med. Ctr.*, 491 N.W.2d 161, 165 (Iowa 1992). However, in rejecting the defendants' challenge to the sufficiency of the plaintiff's evidence, the district associate judge stated:

Well, as far as this Court is concerned, there's no motions in small claims, so as far as this Court is concerned, she's suing on the basis of negligent care and treatment, and she can testify to that on her own. She doesn't need an expert. So your motion is overruled.

The court granted judgment for the plaintiff for $825. The defendants appealed to the district court, which affirmed, ruling that the substantive requirements for a prima facie case of malpractice are not required in small claims court. The ruling was based, in part, on a very pragmatic consideration: in many small claims cases, it would be economically unfeasible to require the plaintiff to produce expert evidence.

## II. *The Law.*

As the district court noted, the legislature intended to provide an informal manner of trial in small claims cases—at least procedurally. We have said:

For these small claims suits, the legislature thought it was in the public interest to provide a simpler, easier, and less expensive procedure than was afforded in district court under the Rules of Civil Procedure. Under the plan an action can be brought by filing a form provided by the clerk of court. The clerk can help fill out the form. According to § 631.7(1) no formal written pleadings or motions are required although the court may allow them. Fees and costs are paid in advance.

*Barnes Beauty College v. McCoy*, 279 N.W.2d 258, 259 (Iowa 1979) (citations omitted).

The informality in such cases, however, is not without limitations. Iowa Code section 631.11(1) (1997), for example, provides that "[t]he hearing shall be to the court, shall be simple and informal, and shall be conducted by the court itself, without regard to technicalities of *procedure*." (Emphasis added.) In addition, Iowa Code section 631.11(4) requires that "[j]udgment shall be rendered, based upon *applicable law* and upon a preponderance of the evidence." (Emphasis added.)

■ The "applicable law" in medical malpractice cases is well established:

In order to establish a prima facie case of medical malpractice, plaintiff must show evidence which establishes the applicable standard of care, demonstrate this standard has been violated, and develop a causal relationship between the violation and the alleged harm.

This court has recognized three means of establishing specific negligence of a physician:

> One is through expert testimony, the second through evidence showing the physician's lack of care [is] so obvious as to be within comprehension of a layman, and the third[ ] (actually an extension of the second) through evidence that the physician injured a part of the body not involved in the treatment. The first means is the rule and the others are exceptions [to it].

*Perin [v. Hayne]*, 210 N.W.2d [609,] 613 [Iowa 1973]. Generally, when the ordinary care of a physician is an issue, only experts can testify and establish the standard of care and the skill required.

*Kennis*, 491 N.W.2d at 165 (citations omitted).

In addition, Iowa Code section 147.139 provides:

> If the standard of care given by a physician and surgeon licensed pursuant to chapter 148 ... is at issue, the court shall only allow a person to qualify as an expert witness and to testify on the issue of the appropriate standard of care if the person's medical ... qualifications relate directly to the medical problem or problems at issue and the type of treatment administered in the case.

The district court acknowledged these requirements, but it concluded nevertheless that Dr. Cherny was negligent because,

> [a]t the hearing, Dr. Cherny testified that there exists about a five percent chance a permanent suture could become infected. Thus, Dr. Cherny was aware that the lesion on Graeve's neck could have been caused by an infected suture. Nevertheless, Dr. Cherny made no attempt to diagnose the problem as an infected suture, or treat the problem as such.

While this might appear to a layperson to be a logical conclusion, the plaintiff offered no medical evidence that the doctor's care breached any standard of care.

■ Despite the relaxed procedural requirements for small claims cases, the requirement for use of the "applicable law"

remains intact. We conclude that the rules for establishing a prima facie case of medical malpractice are applicable in a small claims case, just as in any other. Because this plaintiff failed to establish a prima facie case of negligence, we reverse and remand for dismissal of the petition.

**REVERSED AND REMANDED.**