Carolyn M. HILL, Appellant,

v.

John McCARTNEY and Neil T. Dunbar, Appellees.

Nos. 8–421, 97–1937.

Court of Appeals of Iowa.

Dec. 28, 1998.

Elizabeth S. Kruidenier and Jennifer Larson of Parrish, Kruidenier, Moss, Dunn & Montgomery, Des Moines, for appellant.

Jeffrey Boehlert and Michael Huppert of Patterson, Lorentzen, Duffield, Timmons, Irish, Becker & Ordway, for appellee–McCartney.

· Michael Roling and Roland Peddicord of Peddicord, Wharton, Thune & Spencer, P.C., Des Moines, for appellee–Dunbar.

Heard by STREIT, P.J., MAHAN, J., and HABHAB, S.J.*

STREIT, P.J.

A patient claims her doctor's statement he did something "freaky" is enough of an admission to stand as her expert testimony for trial. Carolyn Hill appeals the trial court's denial of her application for extension of time to designate experts and the court's grant of summary judgment to defendants in her medical malpractice claim against defendant doctors John McCartney and Neil Dunbar. Because we find Hill failed to establish good cause for not timely designating an expert, we affirm the trial court's denial of her application. Because a jury could infer from McCartney's alleged extrajudicial admissions

that he did breach his standard of care, Hill was not required to have expert testimony to present her claim against McCartney to a jury. We reverse the trial court's grant of summary judgment in favor of McCartney. We affirm in regard to Dunbar.

### I. Background Facts & Proceedings.

Carolyn Hill sought the dental care of McCartney to remove a nickel bridge from her mouth and extract two teeth. During the procedure, the drill McCartney was using allegedly hit Hill's jaw or gum. Hill's face and eye immediately swelled. According to Hill, McCartney became distraught, cried, and stated: "Oh, don't worry about it. I will take care of you. I have malpractice insurance.... I did something freaky to you. I fucked you up." McCartney rushed Hill to a nearby oral surgeon, Dr. Dunbar, who finished the work on her tooth. Hill did not return to either doctor for follow-up care.

Hill filed a pro se medical malpractice petition against the defendants. Trial was scheduled for September 29, 1997. Hill subpoenaed several witnesses to testify as experts, but all witnesses got their subpoenas quashed. She never formally designated expert witnesses. On August 22, 1997, an attorney representing Hill filed an appearance and a motion for extension of time to designate expert witnesses. The defendants filed motions for summary judgment. The court denied the motion for extension of time for lack of good cause and granted summary judgment for the defendants, finding expert testimony was required to prove the applicable standard of care. Hill appeals.

### II. Standard of Review.

We review the trial court's denial of Hill's application to extend the expert witness deadline for abuse of discretion. Trial courts have broad discretion in ruling on whether to extend the time allowed for parties to designate expert witnesses under rule 668.11, and the exercise of that discretion will not be disturbed unless it was exercised on clearly untenable grounds or to an extent

* Senior judge assigned by order pursuant to Iowa Code § 602.9206 (1997).

clearly unreasonable. *Donovan v. State,* 445 N.W.2d 763, 766 (Iowa 1989).

Our review of a grant or denial of summary judgment is at law. Iowa R.App.P. 4; *Gabrilson v. Flynn,* 554 N.W.2d 267, 270 (Iowa 1996). Summary judgment is only appropriate when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Iowa R.Civ.P. 237(c); *Phipps v. IASD Health Servs. Corp.,* 558 N.W.2d 198, 201 (Iowa 1997). To determine whether there is a genuine issue of material fact, the court must examine the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits. Iowa R.Civ.P. 237(c). The record here consists of the pleadings, affidavits, and exhibits. We review the record in the light most favorable to the party opposing summary judgment; in this sense, we consider a motion for summary judgment as we would a motion for directed verdict. *Smith v. CRST Int'l, Inc.,* 553 N.W.2d 890, 893 (Iowa 1996). Under this standard, summary judgment is inappropriate if reasonable minds would differ on how the issue should be resolved. *Dickerson v. Mertz,* 547 N.W.2d 208, 212 (Iowa 1996).

### III. Denial of Application to Extend Expert Designation Deadline.

Hill argues the trial court abused its discretion when it denied her application to extend her expert deadline for "good cause" pursuant to 668.11(1)(a) of the Iowa Code. Section 668.11 states:

1. A party in a professional liability case brought against a licensed professional pursuant to this chapter who intends to call an expert witness of their own selection, shall certify to the court and all other parties the expert's name, qualifications and the purpose for calling the expert within the following time period:

a. The plaintiff within one hundred eighty days of the defendant's answer unless the court for good cause not ex parte extends the time of disclosure....

Iowa Code § 668.11 (1997).

It is not disputed Hill has not complied with the 180–day expert witness certification deadline. She contends the fact she has been unable to locate an expert to assist her gives her good cause to have the deadline extended. She seeks additional time not only to designate an expert, but to locate one as well. She argues she should be held to a less stringent standard in meeting the deadline because she proceeded pro se until the time of the hearing on these matters.

In determining whether good cause exists for granting plaintiff's request to be excused from complying with the section 668.11 time limit, the court considers three factors: (1) the seriousness of the deviation; (2) the prejudice to the defendant; and (3) defendant's counsel's actions. *Hantsbarger v. Coffin,* 501 N.W.2d 501, 505–506 (Iowa 1993).

In this case, the deviation from the time limits were serious. This is not a case like *Hantsbarger* where the plaintiffs designated their expert a week late. *See id.* at 506 (court abused its discretion in not extending deadline for good cause when plaintiff had substantially complied with discovery deadlines and was ready with experts). Hill's situation is more like that in *Donovan* where our supreme court affirmed the district court's denial of plaintiffs' request for an extension of time to designate experts which was filed several months after the expiration of the statutory time period. *Donovan v. State,* 445 N.W.2d at 766.

Hill was not ready with her expert when filing for an application to extend the deadline. In March 1997, Hill sent subpoenas to several doctors she intended to have testify as experts. The subpoenas were quashed in early May 1997. Hill did not seek to have the deadline extended until August 22, 1997. For nearly four months she knew she did not have an expert to assist her and she did nothing. Defense counsel specifically inquired whether Hill intended to call an expert witness at trial. Hill did not substantially comply with the statute.

Extending the deadline would cause the defendants prejudice. Hill did not have an expert designated ten days before trial. Extending the deadline would have meant delaying the trial. The parties are entitled to have their trial held in a timely fashion.

Under these circumstances, the trial court did not abuse its discretion in denying the plaintiff's application to extend the deadline to designate her expert. The trial court's ruling on this issue is affirmed.

### IV. Dismissal of Malpractice Claim for Lack of Expert Testimony.

Hill contends the trial court erred in granting summary judgment to the defendants for lack of expert testimony to establish a standard of care. Hill argues expert testimony was not necessary to establish a prima facie case of negligence because, in this case, it was within the knowledge of a lay person to determine if McCartney was negligent. In the alternative, Hill argues the requirement of expert testimony was overcome by McCartney's own admissions.

In order to establish a prima facie case of medical malpractice, plaintiff must show evidence establishing the applicable standard of care, demonstrating the standard has been violated, and showing a causal relationship between the violation and the alleged harm. *Graeve v. Cherny*, 580 N.W.2d 800, 801 (Iowa 1998).

Generally, when the ordinary care of a physician is an issue, only experts can testify and establish the standard of care and the skill required. *Kennis v. Mercy Hospital Medical Center*, 491 N.W.2d 161, 167 (Iowa 1992). If the standard of care of a physician, surgeon, or dentist is at issue, Iowa law permits only testimony upon appropriate standard of care by an expert who has qualifications, related directly to the medical problem at issue and type of treatment administered. Iowa Code § 147.139; *Bray v. Hill*, 517 N.W.2d 223, 226 (Iowa App.1994). There are two exceptions to the general rule that expert testimony is needed to establish negligence in a medical malpractice action. *Graeve*, 580 N.W.2d at 802. The first exception is when the lack of care is so obvious it is within comprehension of a lay person. *Id.* The second exception, an extension of the first, is when the physician injured a part of the body not involved in the treatment. *Id.*

### A. Necessity of Expert Testimony to Prove Standard of Care.

We first address Hill's contention expert testimony was not required because McCartney's lack of care was so obvious as to be in the comprehension of a lay person. McCartney was removing a nickel bridge in Hill's bottom left jaw and extracting two teeth. The dental procedure McCartney was performing was technical in nature, not within the knowledge of a common lay person. It is without doubt Hill had a bad result which resulted in swelling in her face and eye. The fact Hill had swelling in her face and eye immediately after the procedure, however, does not prove dental malpractice. This is not a case where lack of care was evident without expert testimony. *See, i.e., Bazel v. Mabee*, 576 N.W.2d 385, 387 (Iowa App.1998) (jury question on negligence generated without expert testimony where the plaintiff reported an allergy to Betadine to the doctor and the doctor used the drug on the plaintiff anyway). We affirm the trial court's ruling expert testimony was required to establish the standard of care in this case.

### B. Admissions of Defendant Obviating Necessity of Expert Testimony.

Hill argues McCartney admitted he did not give her proper care and these admissions obviate the need for Hill to present her own expert testimony. Hill contends, after seeing what he had done to Hill, McCartney stated: "Oh, don't worry about it. I will take care of you. I have malpractice insurance.[1]" and "I did something freaky to you. I fucked you up."

Admissions of medical malpractice by a defendant physician can constitute the direct expert testimony needed to show malpractice. *Oswald v. LeGrand*, 453 N.W.2d 634, 640 (Iowa 1990). If a plaintiff can establish the applicable standard of care, and its breach, by the defendants' own statements, summary judgment is not appropriate. *Id.* The proscription of Iowa Code section 668.11 does not extend to testimony elicited from defendant parties who are also experts. *Id.* The admissions in *Oswald* were

---

1. We do not rule on the admissibility of this statement.

statements made in the course of the defendant doctors' in-court testimony. *Id.* While *Oswald* makes it clear such testimony can constitute the expert testimony needed to show malpractice, it did not clarify whether extrajudicial admissions of defendant doctors can constitute the expert testimony needed to show malpractice.

The overwhelming weight of authority holds, and a natural extension of *Oswald* is, that extrajudicial admissions can supply the necessary expert testimony in malpractice cases. *See, i.e., Jarboe v. Harting,* 397 S.W.2d 775 (Ky.App.1965) (the necessary expert testimony may consist of out-of-court admissions by the defendant doctor); *Robertson v. LaCroix,* 534 P.2d 17 (Okl.App.1975) (extrajudicial admission of party opponent has the same legal competency as direct expert testimony); *Lashley v. Koerber,* 26 Cal.2d 83, 156 P.2d 441 (1945) (extrajudicial admissions of defendant have same legal competency as direct expert testimony); 70 C.J.S. Physicians & Surgeons § 62 at 1008 (1951). However, in order for an extrajudicial admission to be sufficient it must be an admission of negligence or lack of skill ordinarily required for the performance of the work undertaken. *See Oswald,* 453 N.W.2d at 640; *Lashley,* 26 Cal.2d 83, 156 P.2d 441.

Because we hold extrajudicial statements can constitute the direct expert testimony needed to show malpractice, our question becomes whether McCartney's alleged statements sufficiently admit negligence or a lack of skill ordinarily required for the work at hand.

Courts have interpreted statements similar to those made by McCartney as sufficient to admit negligence and thereby avoid dismissal

for lack of independent expert testimony.[2] When making this determination, the entire record must be reviewed in the light most favorable to the plaintiff, affording her all reasonable inferences that can be deduced from the factual record. *Hildenbrand v. Cox,* 369 N.W.2d 411, 413 (Iowa 1985). What inferences were to be drawn from McCartney's statements in light of the facts and circumstances shown by the evidence was a question of fact to be determined by the jury. The jury could infer from the statements "I fucked you up" and "I did something freaky," as well as McCartney's reference to his medical malpractice insurance, if admissible, that he did not use the degree of care ordinarily exercised by other doctors in the community, and, as a result of the lack of care, Hill was injured. Under these circumstances, the trial court erred in granting summary judgment in regard to McCartney.

There were no admissions made by Dunbar. Based on the preceding analysis, the trial court was correct in dismissing the claim against Dunbar. We affirm the trial court in regard to Dunbar.

In conclusion, we affirm in part, reverse in part, and remand this case for further proceedings consistent with this opinion.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

**2.** *See, i.e., Perkins v. Hausladen,* 828 S.W.2d 652 (Ky.1992) (doctor told patient's husband after surgery he "drilled in and hit a blood vein and had to stop surgery"); *Orozco v. Henry Ford Hospital,* 408 Mich. 248, 254, 290 N.W.2d 363 (1980) (doctor was speaking during surgery and said "oops, I cut in the wrong place"); *Robertson v. LaCroix,* 534 P.2d 17, 21 (Okla.App.1975) (doctor told patient he "just made a mistake and got over too far") *Greenwood v. Harris,* 362 P.2d 85 (Okl.1961) ("this is a terrible thing I have done

...."); *Sheffield v. Runner,* 163 Cal.App.2d 48, 328 P.2d 828 (1958) ("I should have put her in the hospital"); *Wickoff v. James,* 159 Cal.App.2d 664, 324 P.2d 661 (1958) ("Boy, I sure made a mess of things") *Lashley v. Koerber,* 26 Cal.2d 83, 156 P.2d 441, 444 (1945) (doctor informed patient "it is not your fault, it is all my own"); *Scott v. Sciaroni,* 66 Cal.App. 577, 226 P. 827 (1924) (doctor telling patient it was his fault she was in the condition she was in admission of negligence).