# IN THE COURT OF APPEALS OF IOWA

No. 19-1277
Filed August 5, 2020

**DARREL K. STANTON,**
    Plaintiff-Appellee,

**vs.**

**KNOXVILLE COMMUNITY HOSPITAL, INC. d/b/a KNOXVILLE HOSPITALS & CLINICS and STEPHEN R. ECKSTAT,**
    Defendants-Appellants.
_____

Appeal from the Iowa District Court for Marion County, Gregory A. Hulse, Judge.

A hospital and doctor seek interlocutory review of an order denying their motions for summary judgment. **REVERSED AND REMANDED.**

Frederick T. Harris, Jeffrey R. Kappelman, and Andrew M. Stanley (until withdrawal) of Finley Law Firm, P.C., Des Moines, and Jennifer Rinden and Nancy J. Penner of Shuttleworth & Ingersoll, P.C., Cedar Rapids, for appellants.

Jeremy M. Evans of Carr Law Firm, P.L.C., Des Moines, for appellee.

Considered by Tabor, P.J., and May and Greer, JJ.

**MAY, Judge.**

Darrel Stanton brought this medical negligence case against defendants Knoxville Hospitals & Clinics (Knoxville) and Dr. Stephen Eckstat (Eckstat). Stanton failed to timely designate an expert witness. About three months after Stanton's deadline passed, defendants moved for summary judgment. About a month later, Stanton designated an expert. The district court denied the motions for summary judgment. Our supreme court granted interlocutory review. We reverse and remand.

## I. Factual Background

In September 2017, Stanton filed his petition alleging medical negligence against Knoxville and Eckstat. In October, both defendants answered.

In January 2018, the parties filed a stipulated Trial Scheduling and Discovery Plan (Plan). As to Stanton's expert, the Plan stated:

8. **Expert witnesses**

  A. A party who intends to call an expert witness, including rebuttal expert witnesses, shall certify to the court and all other parties the expert's name, subject matter of expertise, and qualifications, within the following time period, unless the Iowa Code requires an earlier designation date (*see, e.g.,* Iowa Code section 668.11):

   (1) Plaintiff: 210 days before trial or by SEE ATTACHMENT A _____.

Attachment "A" stated:

1. Plaintiff will designate and certify all experts, including but not limited to experts governed by Iowa Code § 668.11, by January 12, 2019 and will disclose expert reports and opinions by February 12, 2019.

2. Defendants will designate and certify all experts, including but not limited to experts governed by Iowa Code § 668.11, by April 11, 2019 and will disclose expert reports and opinions by May 11, 2019.

The record is clear that, in January, Stanton's counsel expressly agreed to the deadlines stated in Attachment "A." One of the defense lawyers had circulated an email proposing those dates, to wit:

Plaintiff's designation due: January 12, 2019
Plaintiff's expert's reports due: February 12, 2019
Defendants' designation due: April 11, 2019
Defendant's expert's reports due: May 11, 2019

In a responsive email, Stanton's counsel said: "That's fine with me."

Also during the winter of 2017–18, both defendants served written discovery requests on Stanton. Both defendants asked Stanton for information about his experts.

Stanton did not answer in a timely manner. On several occasions, defendants' counsel reached out to inquire about the status of Stanton's responses. For example, on April 26, 2018, Knoxville's counsel sent this email, which expressly asked about Stanton's "experts":

We served requests for production and interrogatories on February 13th. I do not believe you have answered and responded. Please let me know when we can expect answers and responses. I am especially interested in list of medical providers, an authorization to receive copies of Mr. Stanton's medical records and information about your experts and claimed damages. My client is understandably putting pressure on me to move this matter along.

On August 2, Stanton provided his discovery responses. They included no specifics about Stanton's retained experts, if any. For example, Eckstat's interrogatory number 8 requested information about "each person whom you have consulted and/or whom you expect to call as an expert witness at trial." In response, Stanton stated:

ANSWER:

> Any and all medical providers contained in the medical records. Records include the information being requested. To be supplemented at a later date if additional experts are necessary

Stanton did not designate experts on or before his January 12, 2019 deadline. Stanton did not produce expert reports on or before his February 12 deadline.

Eckstat and Knoxville complied with their expert deadlines by designating experts on April 1 and 9, respectively.

On April 2, Stanton's lawyer's office began making inquiries into potential experts.

On April 11, defendants filed their motions for summary judgment and supporting documents. Defendants argued that, because Stanton had failed to timely designate an expert, Iowa Code section 668.11 (2017) precluded Stanton from presenting expert testimony at trial. And so Stanton would be unable to prove medical negligence under Iowa law.

On April 24, Stanton filed his resistance. He contended his deadline for designation was June 18, 2019. In the alternative, he argued there was good cause for him to designate experts by June 18.

On May 22, Stanton filed a designation of expert witness. On June 13, Stanton filed his expert's report.

On July 2, the district court entered an order on defendants' motions for summary judgment. The court agreed Stanton had failed to comply with his expert deadlines. But the court found there was good cause for Stanton's failures. And so the court denied summary judgment.

Defendants sought interlocutory review. The supreme court granted their request and then transferred the case to us. We now proceed to the merits.

## II. Standard of Review

"We review the district court's summary judgment ruling to correct errors at law." *Vossoughi v. Polaschek*, 859 N.W.2d 643, 649 (Iowa 2015). When reviewing "good cause" determinations under Iowa Code section 668.11, however, "[t]he scope of our review is for abuse of discretion." *Hantsbarger v. Coffin*, 501 N.W.2d 501, 505 (Iowa 1993). The district court "has broad discretion in ruling on such matters, and the exercise of that discretion will ordinarily not be disturbed unless it was exercised on clearly untenable grounds or to an extent clearly unreasonable." *Id.* (citation omitted).

## III. Analysis

Like most medical-negligence plaintiffs, Stanton could not proceed to trial without an expert.[1] Iowa Code section 668.11 governs Stanton's obligation to timely disclose his expert. It provides in pertinent part:

> 1. A party in a professional liability case brought against a licensed professional pursuant to this chapter who intends to call an expert witness of their own selection, shall certify to the court and all other parties the expert's name, qualifications and the purpose for calling the expert within the following time period:

---

[1] As the court explained in *Donovan v. State*:
> If a doctor operates on the wrong patient or amputates the wrong limb, a plaintiff would not have to introduce expert testimony to establish that the doctor was negligent. On the other hand, highly technical questions of diagnoses and causation which lie beyond the understanding of a layperson require introduction of expert testimony.

445 N.W.2d 763, 766 (Iowa 1989). The parties agree this case falls in the latter category.

> a. The plaintiff within one hundred eighty days of the defendant's answer unless the court for good cause not ex parte extends the time of disclosure.
> b. The defendant within ninety days of plaintiff's certification.
> 2. If a party fails to disclose an expert pursuant to subsection 1 or does not make the expert available for discovery, the expert shall be prohibited from testifying in the action unless leave for the expert's testimony is given by the court for good cause shown.

Iowa Code § 668.11.

As with all statutes, we find the meaning of section 668.11 "in the 'text of the statute,' the 'words chosen by the legislature.'" *See Fishel v. Redenbaugh*, 939 N.W.2d 660, 663 (Iowa Ct. App. 2019) (citation omitted); *see Doe v. State*, 943 N.W.2d 608, 610 (Iowa 2020) (noting "in questions of statutory interpretation, '[w]e do not inquire what the legislature meant; we ask only what the statute means.' This is necessarily a textual inquiry as only the text of a piece of legislation is enacted into law" (alteration in original) (internal citation omitted)).

Like the district court, we conclude Stanton "did not abide by the required timeline in disclosing [his] expert." The parties had all agreed to the deadlines in Attachment A. It plainly stated Stanton's deadline for designating experts was January 12, 2019. Even so, he did not designate until months later, on May 22.

Because Stanton failed to timely designate his expert, subsection (2) of section 668.11 "prohibit[s]" Stanton's expert "from testifying . . . unless leave for the expert's testimony is given by the court for *good cause* shown." (Emphasis added.) The central question, then, is whether or not Stanton has shown "good cause" for his delay.

Our case law fleshes out the meaning of "good cause." In *Donovan*, our supreme court suggested "good cause" in section 668.11 could be compared with

"good cause" in the context of a motion to set aside a default judgment. 445 N.W.2d at 766. There it means

> [a] *sound, effective*, truthful reason, something more than an excuse, a plea, apology, extenuation, or some justification for the resulting effect. *The movant must show his [or her] failure to defend was not due to his [or her] negligence or want of ordinary care or attention, or to his [or her] carelessness or inattention.* He [or she] must show affirmatively he [or she] did intend to defend and took steps to do so, but because of some misunderstanding, accident, mistake or excusable neglect failed to do so. *Defaults will not be vacated where the movant has ignored plain mandates in the rules with ample opportunity to abide by them.*

*Id.* (emphasis added) (citation omitted); *see Nedved v. Welch*, 585 N.W.2d 238, 240 (Iowa 1998) (quoting *Donovan* and noting that "[i]n interpreting the term 'good cause' in section 668.11, we have relied on the definition of good cause for setting aside a default judgment"); *see also Bulmer v. UnityPoint Health*, No. 17-2084, 2019 WL 2144627, at *2 (Iowa Ct. App. May 15, 2019) ("Our supreme court has applied the good-cause definition for setting aside a default judgment to section 668.11.").

Later, we interpreted *Hantsbarger*, 501 N.W.2d at 505–06, to mean that, "[i]n determining whether good cause exists" for purposes of section 668.11, courts should consider "three factors: (1) the seriousness of the deviation; (2) the prejudice to the defendant; and (3) defendant's counsel's actions." *Hill v. McCartney*, 590 N.W.2d 52, 55 (Iowa Ct. App. 1998); *see, e.g., Sadler v. Primus*, No. 18-1198, 2019 WL 4302125, at *3 (Iowa Ct. App. Sept. 11, 2019) (applying three-factor analysis).

Applying these principles to the record here, we find many circumstances that weigh against a finding of good cause. They include the following:

(1) Stanton's deadline was clear.

(2) Stanton had ample opportunity to comply with the deadline. He filed this suit in September 2017, well over a year before his January 2019 expert deadline.

(3) Like the district court, we find Stanton "seriously deviated" from the deadlines. He did not designate until May 22, 2019, more than four months after his January 12 deadline.

(4) Stanton did not start *looking* for an expert until April 2, 2019—a year and a half after he filed this lawsuit in September 2017, and almost three months after his expert-designation deadline had already passed.

(5) Defendants suffered at least some prejudice. Because the defendants complied with *their* deadlines but Stanton did not, the defendants ended up designating experts before Stanton. As a result, Stanton gained—and defendants lost—the strategic advantage of seeing his opponent's expert materials before he had to designate. That is the opposite of what the parties had agreed to. It is also the opposite of the legislature's plan as reflected in Section 668.11(1)(b). It plainly anticipates defendants will not have to designate until *after* plaintiffs.[2]

---

[2] We recognize that prejudice in this case is not as great as in some cases. As the district court properly noted, trial was still six months away when the court denied summary judgment. Even if no prejudice had occurred, however, that would not "excuse" Stanton's "late designation." *See Nedved*, 585 N.W.2d at 241.

(6)     Defendants' counsel made multiple efforts—both through discovery requests and follow-up emails—to obtain from Stanton information about his experts.

Despite these many concerning facts, we are mindful that "[t]he scope of our review is for abuse of discretion." *Hantsbarger*, 501 N.W.2d at 505. Even so, we conclude reversal is appropriate. We believe this outcome is supported by the circumstances listed above. And we emphasize two particular concerns: (1) Stanton has not shown a valid reason for his failure to timely designate his expert; and (2) the district court erroneously concluded defendants' counsel's actions supported a finding of good cause.

As for the reason for Stanton's delay, we defer to the district court's finding that Stanton was "truthful" about the reason for missing the January deadline, namely, that counsel actually believed the deadline was in June. Even so, we cannot conclude Stanton's reason was a "*sound, effective,* truthful reason" of the kind envisioned by *Donovan. See* 445 N.W.2d at 766 (emphasis added) (citation omitted). As the district court correctly found, the filings that established Stanton's January 12 deadline—the Plan and Attachment "A"—were not vague. They were clear. Moreover, as emails between the lawyers show, Stanton's counsel was actually aware of his January 12 deadline. He agreed to it. And, as noted above, Stanton had "ample opportunity"—well over a year—to designate an expert before his January deadline. *See id.* ("Defaults *will not be* vacated where the movant has ignored plain mandates in the rules with ample opportunity to abide by them." (emphasis added) (citation omitted)). Given these circumstances, we cannot conclude Stanton has "show[n]" that his failure to timely designate arose from a

valid reason. *See id.* ("*The movant must show* his [or her] failure to defend *was not due to* his [or her] negligence or want of ordinary care or attention, or to his [or her] carelessness or inattention." (emphasis added) (citation omitted)).

As for defense counsel's actions, the district court was correct in noting that, under *Hantsbarger*, "it is appropriate to consider defendant's counsel's actions, or lack thereof, in determining good cause for granting plaintiffs' request for relief." 501 N.W.2d at 505–06. But we agree with defendants that the district court misapplied this factor by determining defense counsel's actions weighed in favor of a finding of good cause.

The district court noted that defense counsel "waited for the time period [for designating experts] to pass and then used [p]laintiff's late designation as a means to seek summary judgment."[3] We take this to mean the district court believed the defendants should have waited longer before filing their motions for summary judgment. But our supreme court has said this about section 668.11:

> We have previously stated that the legislative intent for establishing deadlines in professional liability actions was to provide certainty

---

[3] Stanton places great reliance on an email in which the defendants' lawyers agreed to wait and "see if the plaintiff's lawyer blows his expert deadline" before moving for summary judgment. Stanton characterizes the defendants' approach as "inappropriate," "troublesome," and "unprecedented." We reject these characterizations. As explained, defense counsel gave Stanton ample opportunity to comply with his obligations before they finally moved for summary judgment. They had no duty to wait longer or offer additional help to their adversary. Stanton's contrary view would turn defense counsel into their "brother's keeper." *See Hantsbarger*, 501 N.W.2d at 505. The *Hantsbarger* court expressly rejected that view. *Id.* (noting "we do not suggest that opposing counsel must act as his or her 'brother's keeper'"); *see also* Gregory Titelman, America's Popular Sayings 11 (2nd ed. 2000) (explaining the phrase "Am I my brother's keeper?" means "Am I responsible for my brother's deeds?"; further explaining that "[a]ccording to the Old Testament, Cain murdered his brother Abel and when asked by God where his brother was, said that he was not his brother's keeper").

about the identity of experts and *prevent last minute dismissals* when an expert cannot be found.  We have also stated:

> *Early disposition* of potential nuisances cases, and those which must ultimately be dismissed for lack of expert testimony, would presumably have a positive impact on the cost and availability of medical services.

Section 668.11 is designed to require a plaintiff to have his or her proof prepared at *an early stage in the litigation* in order that the professional does not have to *spend time, effort and expense* in defending a frivolous action.

*Id.* at 504 (emphasis added) (internal citations omitted).

In light of these principles, we believe defense lawyers are fully justified in moving forward with motions for summary judgment where, as here, (1) the plaintiff's case cannot proceed without a retained expert; (2) the plaintiff's deadline to designate an expert is clear; (3) more than three months have already passed since plaintiff's deadline; (4) even so, the plaintiff has *still* failed to timely designate an expert; and (5) the plaintiff has not otherwise disclosed an expert by, for example (a) providing information about an expert through discovery responses, as was the case in *Hantsbarger*,[4] or (b) filing at least a partial expert designation, as was the case in *Hantsbarger*.[5]  Given these circumstances, we see no reason for defense counsel to have waited until, say, the dispositive-motion deadline before requesting a "last minute dismissal" of plaintiff's case.  *See id.*  That sort of

---

[4] In *Hantsbarger*, "plaintiffs argue[d] that there was 'good cause' to allow their experts to testify because defendant was served with discovery materials which provided information about their experts."  501 N.W.2d at 505.  In concluding the district court should have found "good cause," the *Hantsbarger* court noted *inter alia* that "[p]laintiffs complied with discovery" and "had their experts in hand."  *Id*.
[5] In *Hantsbarger*, plantiffs filed a timely designation, but it only included the names of plaintiff's experts.  501 N.W.2d at 503.  It omitted the "qualifications and the purpose for calling the expert[s]."  *Id.* (quoting Iowa Code § 668.11(1)).

delay would have only increased the "time, effort[,] and expense" of litigation—the very burdens section 668.11 was designed to reduce.  *See id.*

Defense counsel's actions do not support a finding of "good cause."  We disagree with the district court's contrary view.

## IV. Conclusion

The record does not support a finding of "good cause" for purposes of section 668.11.  We reverse the district court's order denying defendants' motions for summary judgment.  We remand for entry of summary judgment in favor of defendants.

**REVERSED AND REMANDED.**