# IN THE COURT OF APPEALS OF IOWA

No. 23-0509
Filed July 24, 2024

**DOUGLAS WILSON and JANE WILSON,**
　　　Plaintiffs-Appellees,

**vs.**

**SHENANDOAH MEDICAL CENTER,**
　　　Defendant-Appellant.
_____

　　　Appeal from the Iowa District Court for Page County, Margaret Reyes, Judge.

　　　Shenandoah Medical Center appeals the district court's denial of its motion for summary judgment. **AFFIRMED.**

　　　Jennifer E. Rinden, Vincent S. Geis, and Nancy J. Penner of Shuttleworth & Ingersoll, PLC, Cedar Rapids, for appellant.

　　　Jessica A. Zupp of Zupp and Zupp Law Firm, Denison, Gary T. Gee of Gary Gee Law Office, Shenandoah, and Andrew D. Sibbernsen of Sibbernsen Law Firm, PC, Omaha, Nebraska, for appellees.

　　　Considered by Badding, P.J., Langholz, J., and Bower, S.J.*

　　　*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2024).

**BOWER, Senior Judge.**

Shenandoah Medical Center appeals the district court's denial of its motion for summary judgment for failure to timely file an expert witness designation. Upon review, we affirm.

## I.    *Background Facts and Proceedings*

In December 2021, Douglas and Jane Wilson filed suit against Shenandoah Medical Center (SMC), alleging SMC committed medical malpractice in its care and treatment of Douglas relating to a hip replacement. On January 20, 2022, SMC filed an answer. On February 1, the Wilsons filed a certificate of merit under Iowa Code section 147.140 (2021), in which registered nurse Jenny Beerman opined "nurses, agents, and employees, working at [SMC] breached the standard of care in caring for and treating Douglas Wilson following his December 30, 2019, right hip replacement procedure."

On March 1, the parties filed a trial scheduling and discovery plan. Among other provisions, it stated the Wilsons would designate their expert witnesses by "210 days before trial or by September 1, 2022," and SMC would designate its witnesses by "150 before trial or by December 1, 2022." On March 8, SMC filed a motion to "extend the trial scheduling time standards in this case to allow this case to be scheduled beyond December 2023 and specifically for July 23–29, 2024." The motion further stated, "Defense counsel has communicated with Plaintiffs' counsel in good faith. Plaintiffs' counsel has indicated he intends to resist this motion but he is available for trial July 23–29, 2024." Following a hearing on SMC's motion to extend trial deadlines, the court entered an order finding "good cause for the motion" and ordered the trial be scheduled in July 2024. The court set a status

hearing for December 8 to confirm the trial date and schedule a pre-trial conference.

On November 30, SMC filed its designation of expert witnesses. On the same date, SMC filed a motion for summary judgment based on the Wilsons' failure to timely file its expert-witness disclosure. *See Struck v. Mercy Health Servs.–Iowa Corp.*, 973 N.W.2d 533, 539 (Iowa 2022) ("It is well settled that expert testimony is required to prove professional negligence claims against healthcare providers.").[1] On December 2, the Wilsons filed an expert-witness disclosure naming Beerman as their expert. The Wilsons resisted SMC's motion for summary judgment, asserting substantial compliance and good cause for missing the expert-designation deadline, as well as lack of prejudice to SMC.

Following a hearing, the district court entered an order denying SMC's motion. SMC filed an application for interlocutory appeal, which our supreme court granted and transferred to this court for disposition.

## II. Standard of Review

We review orders concerning summary judgment for correction of errors at law. *Banwart v. 50th St. Sports, L.L.C.*, 910 N.W.2d 540, 544 (Iowa 2018). Here, however, the court denied SMC's motion based on its finding good cause excused the Wilsons' deviation from the expert-witness deadline. When reviewing "good cause" determinations under Iowa Code section 668.11 (2021), "[t]he scope of our review is for abuse of discretion." *Hantsbarger v. Coffin*, 501 N.W.2d 501, 505

---

[1] The question of whether expert-witness testimony is required to substantiate the Wilsons' claims against SMC is not before us on appeal. *Cf. Struck*, 973 N.W.2d at 539 n.4 (noting two exceptions to the expert-witness requirement).

(Iowa 1993); *see also McGrew v. Otoadese*, 969 N.W.2d 311, 319 (Iowa 2022) (reviewing the district court's admission of expert testimony under Iowa Rule of Civil Procedure 1.500(2) for abuse of discretion). The district court has "broad discretion in ruling on whether to extend the time allowed for parties to designate expert witnesses . . . , and the exercise of that discretion will not be disturbed unless it was exercised on clearly untenable grounds or to an extent clearly unreasonable." *Hill v. McCartney*, 590 N.W.2d 52, 54–55 (Iowa Ct. App. 1998).

## III. Discussion

In this interlocutory appeal, SMC challenges the district court's denial of its motion for summary judgment based on the Wilsons' failure to timely file its expert-witness disclosure. Iowa Code section 668.11(1)(a) requires a plaintiff alleging medical malpractice to "certify to the court and all other parties the expert's name, qualifications and the purpose for calling the expert . . . within one hundred eighty days of the defendant's answer unless the court for good cause not ex parte extends the time of disclosure." Failure to timely designate an expert generally bars the expert from testifying in the action "unless leave for the expert's testimony is given by the court for good cause shown." Iowa Code § 668.11(2).

> Because section 668.11 is a "procedural or remedial" statute, it is subject to liberal interpretation. Only substantial, rather than strict, compliance is required. "Substantial compliance is 'compliance in respect to essential matters necessary to assure the reasonable objectives of the statute.'" The purpose of section 668.11 is "to require a plaintiff to have his or her proof prepared at an early stage in the litigation in order that the professional does not have to spend time, effort and expense in defending a frivolous action."

*Jackson v. Cath. Health Initiatives, Inc.*, No. 22-1911, 2023 WL 5602863, at *2 (Iowa Ct. App. Aug. 30, 2023) (internal citations omitted).

Here, the parties agreed to the deadlines in the trial scheduling and discovery plan, which stated the Wilsons would designate their expert witnesses by "210 days before trial or by September 1, 2022." The Wilsons designated their expert on December 2, 2022. The Wilsons' disclosure was untimely. Accordingly, the central question before the district court was whether the Wilsons established good cause for their delay.

> For purposes of section 668.11, "good cause" is a "sound, effective, *truthful* reason, something more than an excuse, a plea, apology, extenuation, or some justification for the resulting effect. The movant must show his failure to defend was not due to his negligence or want of ordinary care or attention, or to his carelessness or inattention. He must show affirmatively he did intend to [act] and took steps to do so, but because of some misunderstanding, accident, mistake or excusable neglect failed to do so. Defaults will not be vacated where the movant has ignored plain mandates in the rules with ample opportunity to abide by them."

*Reyes v. Smith*, No. 21-0303, 2022 WL 1656238, at *2 (Iowa Ct. App. May 25, 2022) (quoting *Nedved v. Welch*, 585 N.W.2d 238, 240 (Iowa 1998)). In determining whether good cause exists for a plaintiff's noncompliance with the section 668.11 deadline, "the court considers three factors: (1) the seriousness of the deviation; (2) the prejudice to the defendant; and (3) defendant's counsel's actions." *See id.*

SMC correctly notes delays equal to or shorter than three months have been considered serious deviations. *See Nedved*, 585 N.W.2d at 240 (affirming the rejection of an expert designation filed three months late); *Reyes*, 2022 WL 1656238, at *2 ("[A] delay of sixty-six days is substantial."); *see also Hill*, 590 N.W.2d at 55 (affirming the rejection of an expert designation filed four months late). The district court acknowledged as much, noting "Iowa courts have found a

three-month delay in filing an expert designation, as in the present matter, to be a serious deviation."

The district court further observed in *Reyes*, this court found "a late filing deprives a defendant of the 'strategic advantage under section 668.11 of knowing the plaintiffs' expert evidence before designating their own experts.'" (quoting *Reyes*, 2022 WL 1656238, at *2). However, the court found "there are important differences between *Reyes* and the present matter." Specifically,

> Here, the Wilsons argue that SMC is not prejudiced by their delay because trial is not scheduled to occur until July 2024—a delay requested by SMC's counsel. And, unlike *Reyes* where defendants' counsel "remained silent" as to the late disclosures, the Wilsons argue that SMC acquiesced to the delayed disclosures by engaging in extensive scheduling negotiations to conduct depositions both before and after the Wilson[s'] September 1, 2022 deadline. Again, scheduling was delayed by the unavailability of SMC's counsel and SMC continued working on the case even without the Wilson[s'] expert designation.

The court therefore concluded, "Weighing the factors above coupled with the facts of this matter, the court concludes that the Wilsons have established good cause for their delayed disclosures under Iowa Code section 668.11." The court further found the Wilsons' late disclosure of expert testimony was "harmless." *See* Iowa Rs. Civ. P. 1.500(2), .517(3)(a). The court stated, "For the reasons stated above, the court considers the Wilsons' failure to meet the disclosures harmless considering the delayed trial date requested by SMC, the unavailability of SMC's counsel for depositions, and the lack of surprise or prejudice to SMC."

Upon review, we find the record, including exhibits showing correspondence between counsel and the relevant pleadings, supports the court's decision. In reaching this conclusion, we have considered our court's decision in

*Stanton v. Knoxville Community Hospital, Inc.*, No. 19-1277, 2020 WL 4498884, at *4 (Iowa Ct. App. Aug. 5, 2020). In that case, the district court denied the defendants' motion for summary judgment after the plaintiff designated his expert witness in May 2019—four months after the January deadline. *Stanton*, 2020 WL 4498884, at *1.

On interlocutory review, our court reversed the district court's decision upon concluding the record did not support the district court's finding of good cause. The court set forth "many circumstances that weigh[ed] against a finding of good cause." *See id.* at *3–4. Specifically, as relevant here, the court observed the plaintiff "did not start *looking* for an expert until April 2, 2019—a year and a half after he filed this lawsuit in September 2017, and almost three months after his expert-designation deadline had already passed." *Id.* at *3. The court stated "during the winter of 2017–2018, both defendants served written discovery responses on [the plaintiff, asking] for information about his experts," but the plaintiff "did not answer in a timely manner." *Id.* at *1. The defendants continued to "reach[] out to inquire about the status of [the plaintiff's] responses," including an April 2018 email, in which defendant's counsel stated in part: "Please let me know when we can expect answers and responses [to our requests for production and interrogatories]. I am especially interested in [a] list of medical providers, an authorization to receive copies of Mr. Stanton's medical records[,] and information about your experts and claimed damages." *Id.* The plaintiff provided his discovery responses in August 2018, which "included no specifics about [his] retained experts, if any," and instead stated, "Any and all medical providers contained in the medical records. Records include the information being requested. To be

supplemented at a later date if additional experts are necessary." *Id.* The plaintiff did not provide any additional information; his expert-witness designation deadline expired in January 2019, after which his "lawyer's office began making inquiries into potential experts" four months later, in April. *Id.*

Our court observed the plaintiff's "deadline was clear" and "emails between the lawyers show[ed his] counsel was actually aware of [it]"; the plaintiff had "ample opportunity to comply with the deadline"; and the "[d]efendants' counsel made multiple efforts—both through discovery requests and follow-up emails—to obtain from [the plaintiff] information about his expert." *Id.* at *3. The court also noted the defendants suffered "at least some prejudice" by having to designate experts before the plaintiff. *Id.* (noting further the plaintiff gained "the strategic advantage of seeing his opponent's expert materials before he had to designate"). Finally, we observed the district court "erroneously concluded defendants' counsel's actions supported a finding of good cause." *Id.* at *4 (finding the court "misapplied" the defense-counsel-action factor: "The district court noted that defense counsel 'waited for the time period [for designating experts] to pass and then used [p]laintiff's late designation as a means to seek summary judgment.' We take this to mean the district court believed the defendants should have waited longer before filing their motions for summary judgment. . . . [However,] we believe defense lawyers are fully justified in moving forward with motions for summary judgment [under these circumstances].").

In contrast, here, the Wilsons filed suit against SMC in December 2021. On February 1, 2022, the Wilsons filed their certificate of merit setting forth the opinion of nurse Beerman relating to SMC's breach of the standard of care. The parties

filed a trial scheduling and discovery plan, stating the Wilsons would designate their expert witnesses by "210 days before trial or by September 1, 2022." The next week, SMC filed a motion to extend the case processing deadlines, stating in part:

> Defendant requests that the Court extend the trial scheduling time standards in this case to allow this case to be scheduled beyond December 2023 and specifically for July 23–29, 2024. Good cause supports this request. Defense counsels' trial calendars do not permit an earlier trial date. . . . In addition, this is a medical malpractice case. There will be a number of experts designated by the parties. Completing discovery, including expert designations and expert discovery, will require a substantial amount of time, which further supports a trial date within the extension timeline of a complex civil case under [Iowa Rule of Civil Procedure] 23.2(2).

On March 29, over the Wilsons' resistance, the court entered an order finding "good cause" for SMC and ordered the trial be scheduled in July 2024. The court set a status hearing for December 2022 to confirm the trial date and schedule a pre-trial conference.

On May 9, SMC served written discovery requests on the Wilsons. On June 13, the Wilsons provided their discovery responses, which included information about the Wilsons' proposed expert witnesses. For example, in response to interrogatory number 16, which requested "the name, address, telephone number, and employer's name, address and telephone number of each person you expect to call as an expert witness . . . at trial," the Wilsons stated:

Jenny Beerman, R.N, M.N.
Beerman and Associates
829 Greenway Terrace
Kansas City, MO 64113

Ms. Beerman is a Registered Nurse, with a Bachelors of Arts, Masters of Nursing, and am a Clinical Assistant Professor of Nursing, familiar with the standard of care required of registered nurses working in a post operative setting. A copy of her curriculum vitae is attached hereto. Based upon her education, training, experience, knowledge, and review of the medical records, it is anticipated that Ms. Beerman will testify, generally, that the nurses, agents and employees, working at

Shenandoah Medical Center breached the standard of care in caring for and treating Douglas Wilson following his December 30, 2019, right hip replacement procedure. Also attached hereto, please find a copy of Ms. Beerman's Certificate of Merit Affidavit, filed on February 1, 2022.

In addition to Jenny Beerman, R.N, M.N., Plaintiff also anticipates calling all of Plaintiff, Douglas B. Wilson's subsequent treating physicians to testify as to the nature and extent of his injuries, and the medical necessity, fairness and reasonableness of the bills the Plaintiffs have incurred as a result of the Defendant's negligence. Please refer to Plaintiff Douglas B. Wilson's medical records for a more detailed description of the physicians care and treatment of the Plaintiff Douglas B. Wilson. These physicians would, but are not limited to, the following:

Wattana Barrett, MD
Nebraska Medicine
987400 Nebraska Medical Center
Omaha, NE 68198-7400

Curtis Hartman, MD
Nebraska Medicine
987400 Nebraska Medical Center
Omaha, NE 68198-7400

Proleta Datta, MD
Nebraska Medicine
987400 Nebraska Medical Center
Omaha, NE 68198-7400

Matthew Davey, MD
Nebraska Medicine
987400 Nebraska Medical Center
Omaha, NE 68198-7400

Paul Avlwad, MD
Nebraska Medicine
987400 Nebraska Medical Center
Omaha, NE 68198-7400

Erik Moore, MD
Nebraska Medicine
987400 Nebraska Medical Center
Omaha, NE 68198-7400

Khalid Sehak, MD
Nebraska Medicine
987400 Nebraska Medical Center
Omaha, NE 68198-7400

Kerry McDonald, MD
Nebraska Medicine
987400 Nebraska Medical Center
Omaha, NE 68198-7400

Ramona Zephler, PA
Nebraska Medicine
987400 Nebraska Medical Center
Omaha, NE 68198-7400

Discovery is ongoing and Plaintiff reserves the right to supplement his Answer to this Interrogatory at a later time, well in advance of trial.

Meanwhile, the Wilsons asked SMC about scheduling depositions, stating, "Hopefully we aren't having to look too far in to the fall." Correspondence between

the parties' attorneys about scheduling depositions continued right up to the date SMC filed its designation of expert witnesses and motion for summary judgment.

We observe the legislative intent behind the Iowa Code section 668.11 requirement "was to provide certainty about the identity of experts and prevent last minute dismissals when an expert cannot be found." *Hantsbarger*, 501 N.W.2d at 504. This is not a situation in which the court's exercise of discretion defeats the purpose or intent of section 668.11. *But see Stanton*, 2020 WL 4498884, at *3 ("Stanton gained—and defendants lost—the strategic advantage of seeing his opponent's expert materials before he had to designate. That is the opposite of what the parties had agreed to. It is also the opposite of the legislature's plan as reflected in section 668.11(1)(b). It plainly anticipates defendants will not have to designate until *after* plaintiffs."). Nor is this a situation in which the Wilsons have "shown little more than want of ordinary care or attention in missing the expert-designation deadline." *Cf. Reyes*, 2022 WL 1656238, at *2. Because the decision to not bar the Wilsons from designating an expert witness was within the district court's discretion, the court did not err in denying SMC's motion for summary judgment.

**AFFIRMED.**

Badding, P.J., concurs; Langholz, J., dissents.

**LANGHOLZ, Judge** (dissenting).

In malpractice cases against a licensed professional, Iowa law generally requires plaintiffs to "certify to the court and all other parties" the "name, qualifications and the purpose for calling" any expert witness within 180 days "of the defendant's answer." Iowa Code § 668.11(1) (2021). If a plaintiff fails to make this certification, "the expert shall be prohibited from testifying in the action unless leave for the expert's testimony is given by the court for good cause shown." *Id.* § 688.11(2). And so, in a case in which an expert is necessary to prove the claim— like most medical malpractice cases—this failure makes summary judgment dismissing the case appropriate. *See Thomas v. Fellows*, 456 N.W.2d 170, 173 (Iowa 1990)*.*

The plaintiffs here—Douglas and Jane Wilson—failed to file their expert certification on time. After waiting an extra three months or so past the Wilsons' deadline, Shenandoah Medical Center ("SMC") thus moved for summary judgment on the ground that the Wilsons needed an expert and were barred from calling one. The Wilsons offered no reason for their failure to comply with the statute— indeed, they already had their expert lined up—aside from blaming SMC for sitting "silent about the deadline" and continuing to engage with them on deposition scheduling after the deadline passed. Yet the district court found this was good cause and denied SMC's motion for summary judgment.

True, a district court has wide discretion in making a good-cause decision under section 668.11. But I agree with our court's opinion in *Stanton v. Knoxville Community Hospital, Inc.*, No. 19-1277, 2020 WL 4498884 (Iowa Ct. App. Aug. 5, 2020), that the discretion is not limitless. And the same two key concerns that led

us to reverse because that limit was exceeded in *Stanton* are present here: "(1) [the Wilsons have] not shown a valid reason for [their] failure to timely designate [their] expert; and (2) the district court erroneously concluded defendants' counsel's actions supported a finding of good cause." *Id.* at *4. So I would follow *Stanton* and reverse the district court's denial of the motion for summary judgment on the just-cause ground and remand for consideration of SMC's argument that the case must be dismissed for lack of an expert witness.

I.

Our supreme court has interpreted "good cause" under section 668.11 consistent with its meaning in the context of setting aside a default judgment. *See Donovan v. State*, 445 N.W.2d 763, 765–66 (Iowa 1989). It means a "sound, effective, truthful reason, something more than an excuse, a plea, apology, extenuation, or some justification for the resulting effect." *Id.* at 766 (cleaned up). "[C]arelessness or inattention" or "ignor[ance]" will not suffice—parties must show that they intended to follow the statute "and took steps to do so, but because of some misunderstanding, accident, mistake or excusable neglect failed to do so." *Id.* (cleaned up). Our court has also said that it's appropriate to consider "the seriousness of the deviation" from section 668.11's requirements, "the prejudice to the" opposing party, and the opposing "counsel's actions." *Hill v. McCartney*, 590 N.W.2d 52, 56 (Iowa Ct. App. 1998).

We review a district court's decision on good cause for abuse of discretion. *See Hantsbarger v. Coffin*, 501 N.W.2d 501, 505 (Iowa 1993) ("[A] trial court has broad discretion in ruling on such matters, and the exercise of that discretion will ordinarily not be disturbed unless it was exercised on clearly untenable grounds or

to an extent clearly unreasonable." (cleaned up)). But even so, appellate courts have reversed decisions both excusing and refusing to excuse violations of section 668.11 for good cause. *See Stanton*, 2020 WL 4498884, at *3–6 (reversing excusal); *Hantsbarger*, 501 N.W.2d at 505–06 (reversing refusal to excuse).

Our decision in *Stanton* shows the way for this appeal. There, as here, the supreme court found that the district court's denial of summary judgment and excusal of a plaintiff's section-668.11 violation warranted interlocutory review and transferred the appeal to our court. *See Stanton*, 2020 WL 4498884, at *2; *see also* Iowa Rs. App. P. 6.104(2), .1101(3). Just as here, the plaintiff "'seriously deviated' from the deadlines"—the same three months at the time the defendants there filed for summary judgment and one more by the time he submitted his tardy certification—after "ample opportunity to comply" on time. *Stanton*, 2020 WL 4498884, at *3. And of "particular concern[]" to our prior panel, the plaintiff—same as the Wilsons—failed to show "a valid reason for" this noncompliance. *Id.* at *4.

Despite all this, the district court in *Stanton* found good cause excused the untimely expert certification, relying on its determination—also of special concern to our prior panel—that "defense counsel's actions weighed in favor of a finding of good cause." *Id.* The district court there was especially critical "that defense counsel waited for the time period for designating experts to pass and then used plaintiff's late designation as a means to seek summary judgment." *Id.* (cleaned up). But then-Judge May, writing for a unanimous panel of our court, rejected this reasoning, explaining that the district court misapplied the good-cause standard because by waiting three months past the deadline, "defense counsel gave Stanton ample opportunity to comply with his obligations before they finally moved

for summary judgment. They had no duty to wait longer or offer additional help to their adversary. Stanton's contrary view would turn defense counsel into their 'brother's keeper.'" *Id.* at \*4 n.3.; *see also Hantsbarger*, 501 N.W.2d at 505 (rejecting suggestion "that opposing counsel must act as his or her 'brother's keeper'"). And so we reversed the district court's good-cause excusal. *See Stanton*, 2020 WL 4498884, at \*6. We should do the same again here.

To be sure, this case is not identical to *Stanton* in all respects. But unlike the majority, I see the distinctions as either immaterial or cutting *against*—not in favor of—finding good cause. For starters, it's not clear that the Wilsons gave *any* reason for their noncompliance—not even an unsound or ineffective one as in *Stanton* (where the plaintiff's counsel believed the deadline was in June rather than January). *See id.* at \*4. Instead, the Wilsons focused only on the conduct of opposing counsel and the lack of prejudice. They argued that "Defendant misled Plaintiffs about the seriousness with which the expert discovery deadline was being treated," explaining:

> [E]ven in early September, when Plaintiffs inquired about depositions again, Defendant sat silent about the deadline and eventually offered, on October 25, 2022, to schedule depositions in January 2023, seemingly indicating that Defendant was not treating the already-late-disclosure as fatal to Plaintiffs' claims. If Defendant had been in good faith treating that deadline seriously, then Defendant's October 25, 2022, email could have said: "You already missed your expert designation deadline; we are not scheduling depositions now. We are moving for summary judgment. Thank you." Instead, the emails said, "We are booked solid in November and December. What does your January look like?"

Even if the Wilsons were intending for this to be a reason for their noncompliance, just as in *Stanton*, I "cannot conclude" it "was a *sound, effective, truthful* reason of the kind envisioned by *Donovan.*" *Id.* (cleaned up). The conduct

the Wilsons complain about is precisely the sort of normal, zealous advocacy one would expect from opposing counsel. SMC's counsel were under no duty to preview their forthcoming summary-judgment motion to the other side—indeed, doing so at the expense of their client's possible ground for dismissing the case might well have breached their ethical duties. *See* Iowa R. Prof'l Conduct 32:1.6(a) (providing that generally "[a] lawyer shall not reveal information relating to the representation of a client"); *id.* r. 32:3.1 cmt. 1 (noting an "advocate has a duty to use legal procedure for the fullest benefit of the client's cause" without abusing it); *see also id.* r. 32:3.4 (listing duties that *do* exist to opposing party and counsel).

Nor was it misleading to engage in scheduling discussions after the Wilsons missed the deadline. It was prudent, courteous, and ethical for SMC to keep the litigation train moving since SMC did not know if the Wilsons would still file the certification—just a little late or with a good reason for the delay. *See id.* r. 32:3.2 ("A lawyer shall make reasonable efforts to expedite litigation consistent with the interests of the client."). So too was it uncertain whether the court would grant its potential summary-judgment motion or if it could get interlocutory review of a denial. I would thus reiterate *Stanton*'s guidance that good cause cannot be based on this type of conduct by opposing counsel and improperly relying on it is a basis for reversal. *See Stanton*, 2020 WL 4498884, at *4–6. What's more, I don't see how any conduct in September or later—*after* the Wilsons had already missed their September 1 deadline—could ever be a reason for missing that deadline.

I concede that any prejudice to SMC is less than the prejudice in *Stanton* since the Wilsons had filed a certificate of merit and shared some information about their expected expert through discovery responses and trial was further off. But

"[l]ack of prejudice, by itself, does not excuse the [Wilsons'] late designation." *Nedved v. Welch*, 585 N.W.2d 238, 241 (Iowa 1998); *see also Stanton*, 2020 WL 4498884, at *3 n.2 ("Even if no prejudice had occurred, however, that would not excuse Staton's late designation." (cleaned up)). And SMC did still suffer at least some prejudice from having to file its expert certifications first before the Wilsons. SMC thus lacked the certainty of knowing whether the Wilsons would be certifying the same expert who signed the certificate of merit and was identified as an expected expert in discovery (subject to "the right to supplement . . . at a later time") expressly granted by the statutory scheme. *See Stanton*, 2020 WL 4498884, at *4; *see also* Iowa Code §§ 668.11(1), 147.140(3) (reiterating in the later-enacted certificate-of-merit statute that parties must still "comply with the requirements of section 668.11"). So this distinction in prejudice cannot be a ground to affirm the district court's ruling.

Seeing little material daylight between this case and *Stanton*—and finding the reasoning of *Stanton* sound and persuasive—I would thus follow it and reverse the district court's just-cause decision under section 668.11. And because the Wilsons' violation of section 668.11 bars them from calling any expert witnesses, SMC's alternative challenge based on the Wilson's violation of Iowa Rule of Civil Procedure 1.500(2) is moot and need not be considered.

## II.

The Wilsons argue as an alternative ground for affirming the denial of summary judgment that they do not need an expert witness to prove their claims. SMC chose not to respond on the merits, instead contending that we cannot reach that question because the district court did not decide it. But we can affirm the

district court on any basis that the Wilsons urged to the district court. *See Moyer v. City of Des Moines*, 505 N.W.2d 191, 193 (Iowa 1993). After *winning* in the district court, the Wilsons were not required to file a cross-appeal or a 1.904 motion asking the court to give them a victory twice over. *See Jasper v. H. Nizam, Inc.*, 764 N.W.2d 751, 774 (Iowa 2009). SMC's choice not to engage on this ground was thus precarious.

Of course, we are not completely without briefing on the issue—both parties briefed it in the district court. And it seems that SMC likely has the better argument. So I wouldn't affirm on this basis. But I am reluctant to grant relief not requested—indeed expressly disclaimed—on appeal. Thus, if I were writing for the court, rather than dissenting, I would not reach this question. After all, we are not *required* to consider an alternative ground for affirmance not decided by the court. *See, e.g.*, *Moyer*, 505 N.W.2d at 193 (declining invitation to affirm on alternate grounds because the issue was moot). And so, despite the unfortunate wasted judicial resources from not resolving the matter now, I would remand to the district court to consider the rest of SMC's summary judgment motion in the first instance.

\* \* \*

To sum up, I would hold that the district court abused its discretion in concluding that the Wilsons had good cause for their failure to file their expert certifications under section 668.11 on time. It thus erred in denying SMC summary judgment on that ground. And since the Wilsons would be barred from presenting expert testimony under section 668.11, we should remand this case for the district court to consider whether the Wilsons' claims fail as a matter of law without expert testimony. Because the majority instead affirms, I respectfully dissent.