# In the Iowa Supreme Court

No. 23–0509

Submitted March 26, 2025—Filed May 23, 2025

**Douglas Wilson** and **Jane Wilson,**

Appellees,

vs.

**Shenandoah Medical Center,**

Appellant.

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Page County, Margaret Reyes, judge.

A hospital seeks further review of a court of appeals decision affirming a district court ruling that good cause supported relief from the expert certification deadline under Iowa Code section 668.11. **Decision of Court of Appeals Vacated; District Court Judgment Reversed and Case Remanded with Instructions.**

Waterman, J., delivered the opinion of the court, in which Oxley, McDermott, and May, JJ., joined. Mansfield, J., filed a dissenting opinion, in which Christensen, C.J., and McDonald, J., joined.

Nancy J. Penner (argued), Jennifer E. Rinden, and Vincent S. Geis of Shuttleworth & Ingersoll, PLC, Cedar Rapids, for appellant.

Jessica A. Zupp (argued) of Zupp and Zupp Law Firm, Denison; Gary T. Gee of GaryGee Law Office, Shenandoah; and Andrew D. Sibbernsen of Sibbernsen Law Firm, PC, Omaha, Nebraska, for appellees.

**Waterman, Justice.**

Are defense attorneys their "brother's keeper," obligated to remind opposing counsel of expert disclosure deadlines? This medical malpractice case requires us to revisit Iowa Code section 668.11 (2021), which in professional liability cases, prohibits the testimony of experts not timely certified unless good cause is shown for missing the deadline.

In this case, the plaintiff underwent hip joint replacement surgery and was injured in a fall while convalescing at the defendant hospital. He and his spouse sued the hospital, alleging professional negligence in his postoperative care. The plaintiffs identified a nursing expert in a certificate of merit affidavit and an interrogatory answer. But the plaintiffs, without explanation, did not certify their nursing expert under section 668.11 until the defendant moved for summary judgment three months after the agreed-upon deadline expired. The plaintiffs resisted, arguing that expert testimony was not required to avoid summary judgment and blaming defense counsel's silence for missing the plaintiffs' expert deadline. The district court found good cause excused the delay, relying on defense counsel's silence about that deadline while scheduling other matters. The court did not decide whether expert testimony was required. We granted the hospital's application for interlocutory appeal and transferred the case to the court of appeals, where a three-judge panel affirmed over a dissent. We granted the hospital's application for further review.

On our review, we conclude that the district court abused its discretion in ruling that good cause excused the plaintiffs' three-month delay in certifying their expert under section 668.11. Defense counsel is not their brother's keeper. We hold that defense counsel has no duty to remind opposing counsel of the expert certification deadline, and an adversary's silence cannot excuse missing the statutory deadline by three months. The defendant's relative lack of prejudice

alone is insufficient to establish good cause. The plaintiffs' expert is prohibited from testifying. For the reasons explained below, we vacate the court of appeals decision and reverse the district court ruling. We remand the case for the district court to determine in the first instance whether these plaintiffs' claims require expert testimony to avoid summary judgment.

**I. Background Facts and Proceedings.**

On December 30, 2019, Douglas Wilson underwent a total right hip replacement surgery at the Shenandoah Medical Center (SMC). Wilson was transferred to the postanesthesia care unit in stable condition. But nurses noted that "pain control has been very difficult for this patient." Nurses also noted that Wilson had attempted to get out of his bed and walk on his own. To ensure Wilson did not get out of bed without assistance, a bed alarm was ordered and a family member was asked to spend the night with him. Over the next two days, Wilson remained at SMC with ongoing evaluations by the nursing staff. They observed that Wilson exhibited signs of confusion and memory loss. As the nurses described it, Wilson experienced "episodes of coherence, but they [were] intermittent."

On January 3, 2020, the nursing staff noted that Wilson "was more awake and alert" and his episodes of confusion were briefer and less frequent. Wilson again attempted to get out of bed and walk, this time with the assistance of his wife Jane, to the bathroom but he fell to the floor. In response, the nursing staff indicated that Wilson would be maintained "1:1" and that Wilson would "have a dedicated staff member overnight." The next day, Wilson's confusion persisted and he yet again attempted to leave his bed unassisted. Late in the day, Wilson stood up without assistance to use the bathroom. He fell to the floor, striking his head and landing on his right hip, the one with the new prosthetic joint.

The Wilsons filed this medical malpractice action against SMC on December 27, 2021. They alleged that SMC's nurses were negligent in their postoperative care. SMC filed its answer on January 20, 2022. Shortly thereafter, the Wilsons filed a certificate of merit affidavit under Iowa Code section 147.140. The certificate was signed by registered nurse Jenny Beerman, who stated, "It is my opinion that nurses, agents and employees, working at [SMC] breached the standard of care in caring for and treating Douglas Wilson . . . ."

Iowa Code section 668.11 governs disclosure of expert witnesses in professional liability cases. That section requires a party "who intends to call an expert witness" to "certify to the court and all other parties the expert's name, qualifications and the purpose for calling the expert" within certain deadlines. *Id.* § 668.11(1). The plaintiff must make this disclosure "within one hundred eighty days of the defendant's answer,"[1] while the defendant must make this disclosure "within ninety days of plaintiff's certification." *Id.* Any party who fails to comply with these disclosure deadlines is prohibited from offering expert testimony unless "good cause [is] shown." *Id.* § 668.11(2). Based on this statute, the Wilsons' original section 668.11 deadline was July 27. Also relevant is Iowa Rule of Civil Procedure 1.500(2)(*d*), which requires expert disclosures to occur "at the times and in the sequence set forth in the court's trial scheduling order."

The parties conferred and created a trial scheduling plan that imposed a number of additional deadlines. SMC suggested pushing the deadline to certify experts to early 2023. The Wilsons' counsel pushed back and wrote in an email, "While I have no problem pushing out the deadline for expert disclosure, I don't want to wait until January of next year. I propose a September 1st deadline for Plaintiffs' experts and December 1st for Defendant experts. Let me know your

---

[1]The statute also permits the court to extend this deadline based on a showing of "good cause." Iowa Code § 668.11(1)(*a*).

thoughts?" SMC agreed to these dates. Accordingly, the trial scheduling plan read as follows:

> A party who intends to call an expert witness, including rebuttal expert witnesses, shall certify to the court and all other parties the expert's name, subject matter of expertise, and qualifications, within the following time period, unless the Iowa Code requires an earlier designation date (*see, e.g.,* Iowa Code section 668.11):
>
> (1) Plaintiff: 210 days before trial or *by September 1, 2022.*
>
> (2) Defendant/Third Party Plaintiff: 150 days before trial or by December 1, 2022.

(Emphasis added.) The parties filed the plan with the district court on March 1.

Our civil case processing standards generally require scheduling trial in complex civil actions within twenty-four months, which was December 27, 2023. *See* Iowa Ct. R. 23.2(1). This timeline can be extended by an additional twelve months "[i]f a party shows good cause." *Id.* r. 23.2(2). Due to a backlog of trials resulting from delays caused by the COVID-19 pandemic, SMC's counsel was not available for trial until mid-2024. Accordingly, on March 8, 2022, SMC filed a motion for a trial date exceeding the usual time standards and proposed a trial date of July 23, 2024. The Wilsons opposed the motion but indicated that they were available for trial on the suggested date. The court granted SMC's motion and trial was scheduled for July 23, 2024.

Over the next several months, both parties actively participated in discovery. The Wilsons served their initial disclosures on March 31, 2022, and SMC served its initial disclosures the next day. SMC answered interrogatories on June 8. An interrogatory propounded by SMC asked the Wilsons for "the name . . . of each person you expect to call as an expert witness . . . at trial." On July 13, the Wilsons served an answer to the interrogatory naming Beerman, who had executed the Wilsons' certificate of merit affidavit, and stated,

> Ms. Beerman is a Registered Nurse, with a Bachelors of Arts, Masters of Nursing, and [is] a Clinical Assistant Professor of Nursing, familiar with the standard of care required of registered nurses working in a post operative setting. A copy of her curriculum vitae is attached hereto. Based upon her education, training, experience, knowledge, and review of the medical records, it is anticipated that Ms. Beerman will testify, generally, that the nurses, agents and employees, working at [SMC] breached the standard of care in caring for and treating Douglas Wilson following his December 30, 2019, right hip replacement procedure. Also attached hereto, please find a copy of Ms. Beerman's Certificate of Merit Affidavit, filed on February 1, 2022.

This interrogatory answer did not mention that Beerman would testify on the issues of causation or damages.

The agreed September 1 deadline for the Wilsons to certify their experts under section 668.11 came and went without the Wilsons certifying any experts. When the Wilsons reached out to SMC's counsel in September to schedule fact witness depositions, defense counsel's response made no reference to the missed deadline.

On November 30, SMC certified two experts. SMC simultaneously moved for summary judgment, arguing that the Wilsons' failure to certify any expert witnesses by the September 1 deadline precluded the plaintiffs from offering expert testimony at trial. Without expert testimony, SMC argued that the Wilsons could not avoid summary judgment. On December 2, three months after their deadline, the Wilsons certified Beerman as their expert witness. In their section 668.11 certification, the Wilsons stated that Beerman would testify to "[the] standard of care, causation, and damages."

The Wilsons resisted SMC's motion for summary judgment. The Wilsons primarily argued that they did not need expert testimony because SMC violated its own standard of care by failing to provide "1:1" patient care as promised, and laypersons could readily understand the obvious risk of harm from a fall. In the

alternative, the Wilsons argued they had good cause for a late disclosure of their expert under section 668.11. The Wilsons admitted that they had missed the certification deadline by three months and offered no explanation beyond stating that SMC "sat silent about the deadline." The Wilsons explained that SMC "seemingly indicat[ed] that [it] was not treating the already-late-disclosure as fatal to Plaintiffs' claims" and that SMC failed to "offer any evidence to suggest that it was affirmatively concerned about the expert [certification]." The Wilsons asserted that SMC should have answered discovery emails differently to demonstrate its concern.

The district court denied SMC's motion for summary judgment. The district court acknowledged that "Iowa courts have found a 3-month delay in filing an expert designation, as in the present matter, to be a serious deviation. *See Nedved v. Welch*, 585 N.W.2d 238, 240 (Iowa 1998) [(per curiam)] (affirming the rejection of an expert designation filed three months late)." The district court nevertheless ruled that the Wilsons had shown good cause under section 668.11 because "SMC acquiesced to the delayed disclosures by engaging in extensive scheduling negotiations to conduct depositions both before and after the Wilson's September 1, 2022 deadline." Additionally, the district court relied on the fact that "scheduling was delayed by the unavailability of SMC's counsel and SMC continued working on the case even without the Wilson's expert designation." The district court did not reach the Wilsons' argument that expert testimony was not required to get their claims to the jury.

SMC applied for interlocutory appeal. We granted SMC's application and transferred the case to the court of appeals where a divided three-judge panel affirmed the district court's ruling. The majority agreed with the district court that the Wilsons' section 668.11 certification three months after the deadline was "a serious deviation." Additionally, the majority observed that a late filing

deprives a defendant of the advantage created by section 668.11, of being apprised of whom the plaintiff intends to call as experts before deciding whom to call as defense experts. However, the majority concluded that the district court had not abused its discretion in finding good cause. The majority reasoned:

> [T]he legislative intent behind the Iowa Code section 668.11 requirement "was to provide certainty about the identity of experts and prevent last minute dismissals when an expert cannot be found." *Hantsbarger*[ *v. Coffin*], 501 N.W.2d [501,] 504 [(Iowa 1993) (en banc)]. This is not a situation in which the court's exercise of discretion defeats the purpose or intent of section 668.11. Nor is this a situation in which the Wilsons have "shown little more than want of ordinary care or attention in missing the expert-designation deadline." *Cf. Reyes*[ *v. Smith*, No. 21–0303], 2022 WL 1656238, at *2 [(Iowa Ct. App. May 25, 2022)]. Because the decision to not bar the Wilsons from designating an expert witness was within the district court's discretion, the court did not err in denying SMC's motion for summary judgment.

(Citation omitted.)

The dissent concluded that the Wilsons had not shown good cause. The dissent noted that "[t]he Wilsons offered no reason for their failure to comply with the statute . . . aside from blaming SMC." According to the dissent, SMC's silence as to the deadlines did not establish good cause because "counsel were under no duty to preview their forthcoming summary-judgment motion to the other side—indeed, doing so at the expense of their client's possible ground for dismissing the case might well have breached their ethical duties."

We granted SMC's application for further review.

## II. Standard of Review.

"We review a district court's interpretation of Iowa Code section 668.11 for errors at law." *Kirlin v. Monaster*, 19 N.W.3d 108, 113 (Iowa 2025). We review a district court's good cause determination under Iowa Code section 668.11 for abuse of discretion. *Hantsbarger*, 501 N.W.2d at 505. "A trial court has broad discretion in ruling on such matters, and the exercise of that discretion will

ordinarily not be disturbed unless it was exercised on clearly untenable grounds or to an extent clearly unreasonable." *Kirlin*, 19 N.W.3d at 113 (quoting *Donovan v. State*, 445 N.W.2d 763, 766 (Iowa 1989)). But "[w]hen a discretionary decision by a trial court involves an erroneous interpretation of law, our review is for legal error." *Whitley v. C.R. Pharmacy Serv., Inc.*, 816 N.W.2d 378, 389 n.6 (Iowa 2012).

### III. Analysis.

Most medical malpractice actions arising from the patient's fall while convalescing in the hospital require expert testimony to get past a motion for summary judgment. *See Struck v. Mercy Health Servs.-Iowa Corp.*, 973 N.W.2d 533, 543–44 (Iowa 2022). "The early identification of experts by a plaintiff in a medical malpractice case is mandated by Iowa Code section 668.11." *Donovan*, 445 N.W.2d at 765. Iowa Code section 668.11 provides:

> 1. A party in a professional liability case brought against a licensed professional pursuant to this chapter who intends to call an expert witness of their own selection, shall certify to the court and all other parties the expert's name, qualifications and the purpose for calling the expert within the following time period:
>
> *a.* The plaintiff within one hundred eighty days of the defendant's answer unless the court for good cause not ex parte extends the time of disclosure.
>
> *b.* The defendant within ninety days of plaintiff's certification.
>
> 2. If a party fails to disclose an expert pursuant to subsection 1 or does not make the expert available for discovery, the expert shall be prohibited from testifying in the action *unless leave for the expert's testimony is given by the court for good cause shown.*

(Emphasis added.) Unlike many discovery deadlines, which are calculated backwards from the trial date, Iowa Code section 668.11 looks forward from the beginning of the case and fixes the expert certification deadline at 180 days from the date the answer is filed.

The objectives of section 668.11 "include providing certainty about the identity of experts and preventing last minute dismissals when an expert cannot be found." *Nedved*, 585 N.W.2d at 240. "The statute is designed to require plaintiffs to have their proof prepared at an early stage in the litigation in order to protect professionals from having to defend against frivolous suits." *Id.* "Early disposition of potential nuisance[] cases, and those which must ultimately be dismissed for lack of expert testimony, would presumably have a positive impact on the cost and availability of medical services." *Hantsbarger*, 501 N.W.2d at 504 (quoting *Thomas v. Fellows*, 456 N.W.2d 170, 173 (Iowa 1990)).[2]

It is undisputed that the Wilsons did not "certify to the court and all other parties [Beerman's] name, qualifications and the purpose for calling [her] . . . within one hundred eighty days of the defendant's answer" or by the parties' agreed-upon deadline of September 1, 2022. Iowa Code § 668.11(1)(*a*). The Wilsons did not certify their expert until December 2—three months after the deadline.

The Wilsons have the burden to demonstrate good cause for their delayed certification. *See Nedved*, 585 N.W.2d at 240. We have defined "good cause" for purposes of section 668.11 as a

> sound, effective, truthful reason, something more than an excuse, a plea, apology, extenuation, or some justification for the resulting effect. The movant must show his failure . . . was not due to his negligence or want of ordinary care or attention, or to his carelessness or inattention. He must show affirmatively he did intend to defend and took steps to do so, but because of some

---

[2]Our colleagues in the dissent erroneously equate the "good cause" to exceed the time standards for setting a trial date under Iowa Court Rule 23.2(2) with the "good cause" required under Iowa Code section 668.11 to extend the statutory expert disclosure deadline. That is comparing apples to oranges. The legislature made the policy choice to mandate early disclosure of experts in medical malpractice actions, even though the trial itself may be several years away. This is because expert testimony typically is required in malpractice actions, and early disclosure facilitates quicker dismissal of actions lacking the requisite expert testimony, thereby reducing the expense of prolonged litigation. Trial court discretion to postpone the trial date is not cabined by section 668.11's early disclosure deadline.

misunderstanding, accident, mistake or excusable neglect failed to do so.

*Donovan*, 445 N.W.2d at 766 (quoting *Dealers Warehouse Co. v. Wahl & Assocs.*, 216 N.W.2d 391, 394–95 (Iowa 1974)). The Wilsons have offered no such valid reason for their three-month delay. Rather, the Wilsons contend, and the district court found, that good cause was shown by defense counsel's silence about the deadline while discussing other scheduling matters and conducting fact witness discovery. That reason is insufficient to establish good cause. *See, e.g., Thomas*, 456 N.W.2d at 171–72 (counsel's ignorance of section 668.11's deadline does not constitute good cause); *Nedved*, 585 N.W.2d at 240–41 (determining that scheduling problems and changing lawyers are insufficient reasons); *Donovan*, 445 N.W.2d at 766 (counsel's inexperience in medical malpractice cases was not good cause); *Stanton v. Knoxville Comm. Hosp., Inc.*, No. 19–1277, 2020 WL 4498884, at *4 (Iowa Ct. App. Aug. 5, 2020) (counsel truly but erroneously believed the section 668.11 deadline was in June rather than January; reversing the district court's denial of summary judgment because counsel's reason was not "a '*sound, effective,* truthful reason' of the kind envisioned by *Donovan*"); *cf. Mokhtarian v. GTE Midwest Inc.*, 578 N.W.2d 666, 669 (Iowa 1998) (affirming dismissal for untimely service of original notice, because "Mokhtarian has provided no explanation for the delay in proper service").

Even if the Wilsons had provided a valid reason, the district court would still have to consider several factors in determining whether good cause exists to excuse the delay. First, we consider "the seriousness of the deviation." *Hantsbarger*, 501 N.W.2d at 505. Second, we consider the "defendant's prejudice or lack thereof." *Id.* Third, we consider "the actions of the defense counsel" but "emphasize[] that defense counsel are not their 'brother's keeper.' " *Kirlin*, 19

N.W.3d at 117–18 (quoting *Hantsbarger*, 501 N.W.2d at 505). Finally, we may also consider "diligence by the plaintiffs in pursuing their case." *Id.* at 115.

First, the district court and court of appeals alike determined this was a serious deviation. We agree. While short delays of only a week are not serious deviations, *see Hantsbarger*, 501 N.W.2d at 505, we have repeatedly held that delays of several months are considered serious deviations, *see, e.g.*, *Nedved*, 585 N.W.2d at 241 (holding that a three-month delay was a serious deviation); *Donovan*, 445 N.W.2d at 765–66 (acknowledging that a three-month delay is a serious deviation); *see also Stanton*, 2020 WL 4498884, at *1–2 (three-month delay when defendant moved for summary judgment); *Hill v. McCartney*, 590 N.W.2d 52, 55 (Iowa Ct. App. 1998) (holding that a four-month delay was a serious deviation). Here, the Wilsons were required to make their expert designation by September 1. They did not make this designation until December 2, three months late, and then only after prompting by the defendant's own designation of experts and motion for summary judgment. Following our precedents, we hold that the Wilsons' three-month delay in certifying their expert under section 668.11 was a serious deviation. This factor cuts strongly against finding good cause, especially when, as here, the Wilsons offered no valid reason for that delay.

Our colleagues in the dissent mistakenly conclude that "the deviation was *not* serious" here because merely counting the days after the deadline "reads 'deviation' too narrowly" as they quote *Kirlin v. Monaster*. But the next sentence in *Kirlin* provides the context the dissent omits: "Missing a clear deadline is different from missing an ambiguous one while adhering to the deadline that you *thought* applied." 19 N.W.3d at 115. In a prior appeal to *Kirlin*, we had reversed the district court's grant of summary judgment for the defendants based on a certificate-of-merit issue, reinstated the Kirlins' medical malpractice action, and

remanded the case for further proceedings. *Kirlin v. Monaster*, 984 N.W.2d 412, 414, 417 (Iowa 2023). When the district court granted summary judgment prior to the first appeal, the plaintiffs still had twenty-nine days to certify their experts under section 668.11. *Kirlin*, 19 N.W.3d at 112. On remand of the reinstated proceedings, the parties disagreed as to the effect of the intervening appeal on the Kirlins' expert certification deadline. *Id.* at 115. Despite the resulting ambiguity as to that deadline, the district court ruled that the Kirlins' expert designation was untimely and without good cause, and it again granted summary judgment for the defendants. *Id.* at 113. We reversed, holding that the district court abused its discretion by failing to find good cause given the uncertain deadline. *Id.* at 119. By contrast, the Wilsons missed a *clear* deadline, without a valid excuse.

The Wilsons rely heavily on *Preferred Marketing Associates Co. v. Hawkeye National Life Insurance*, 452 N.W.2d 389 (Iowa 1990). In *Preferred Marketing*, the plaintiff disclosed its expert for calculating damages a week before trial after the case had been pending two years. *Id.* at 392. The late disclosure violated the parties' agreed-upon discovery plan. *Id.* The district court, exercising its discretion, permitted the expert to testify and we affirmed. *Id.* at 391–92. According to the Wilsons, "if a two-year delay combined with a new expert the week of trial was not reversible in the [*Preferred Marketing*] case, then it is not reversible error here." But *Preferred Marketing* was not a professional malpractice action governed by section 668.11, and it did not apply a good cause standard. *See id.* By relying on *Preferred Marketing*, the Wilsons improperly conflate general discovery rules governing expert disclosures with the more specific statutory requirement in section 668.11 governing disclosure of experts in professional malpractice actions. Doing so nullifies the general assembly's special rules

specific to professional malpractice claims. *Preferred Marketing* is simply inapplicable.

Second, we consider the "defendant's prejudice or lack thereof." *Hantsbarger,* 501 N.W.2d at 505. SMC argues with some force that it lost "the strategic advantage of seeing [its] opponent's expert materials before [it] had to designate." (Quoting *Stanton,* 2020 WL 4498884, at *3.) SMC emphasizes the "uncertainty as to Plaintiffs' intent and plans to continue the case with experts." The Wilsons argue that SMC was not prejudiced because their expert, Beerman, was identified as their standard of care expert in their interrogatory answer on July 13, before the September 1 deadline under section 668.11. But as SMC's counsel pointedly counters, interrogatory answers do not provide the certainty the statute requires. That is because interrogatory answers can be easily supplemented. Indeed, the Wilsons' interrogatory answer ended with the caveat: "Discovery is ongoing and Plaintiff reserves the right to supplement his Answer to this Interrogatory at a later time, well in advance of trial." By contrast, leave of court for good cause shown is required to supplement a section 668.11 designation to add a new expert. *Id.*; *see also Smith v. Billsby,* No. 02–1863, 2003 WL 22828295, at *2 (Iowa Ct. App. Nov. 26, 2003) (affirming ruling excluding expert's new causation opinion against another defendant disclosed in untimely amendment to section 668.11 designation). In any event, lack of prejudice is not dispositive under Iowa Code section 668.11. *See, e.g., Nedved,* 585 N.W.2d at 241 ("Lack of prejudice, by itself, does not excuse the [plaintiffs'] late designation."); *cf. Mokhtarian,* 578 N.W.2d at 669 (rejecting lack of prejudice to the defendant as a justification for a delay in serving the original notice).

Third, we consider the actions of defense counsel. *Kirlin,* 19 N.W.3d at 117–18; *Hantsbarger,* 501 N.W.2d at 505–06. This factor is the heart of the Wilsons' position on good cause. Specifically, the Wilsons argue:

> While, to be sure, defense counsel is not required to be his brother's keeper, courts also do not condone misusing good faith discovery extensions in order to lull the other party into a *false* sense of security over the agreed-upon delay. *In re Marriage of Hutchinson*, 974 N.W.2d 466, 476–77 (Iowa 2022) (describing bribes, dishonesty, and false promises as extrinsically fraudulent). The rules are supposed to be construed and applied to encourage *good faith* and fair dealing, not baits and switches. Had defense counsel simply picked up the phone and asked about experts, like the rules require, all of this delay could have been avoided.

The Wilsons essentially fault SMC's silence about the section 668.11 deadline while the parties scheduled depositions and other deadlines and postponed the trial date. The Wilsons argue, and the district court found, that SMC's silence about the deadline justified a good cause finding excusing the Wilsons' untimely disclosure. We disagree. SMC's counsel had no duty to remind the Wilsons' counsel of the statutory deadline. The Wilsons' suggestion that the defense counsel had an obligation under the rules to "pick[] up the phone" refers to counsels' obligation to meet and confer before seeking judicial intervention with respect to discovery disputes. *See* Iowa R. Civ. P. 1.501(3) ("Any discovery motion presented to the court must include a certification that the movant has in good faith personally spoken with or attempted to speak with other affected parties in an effort to resolve the dispute without court action."). At issue here is section 668.11's statutory disclosure requirement, not a motion to compel discovery.

Nor did defense counsel say or do anything to signal an agreed extension of the Wilsons' section 668.11 deadline. The phone works both ways. It is the Wilsons who should have confirmed any extension of their own September 1 deadline with opposing counsel. *See Kirlin*, 19 N.W.3d at 119 (stating "a prudent counsel should confirm all deadlines" under section 668.11). Indeed, in *Kirlin*, defense counsel had "offered the view that the expert deadline was an open question to be determined." *Id.* at 118. Not so here.

We hold that defense counsel's silence about section 668.11's certification deadline does not justify a finding of good cause. A contrary holding would undermine the statutory deadlines and rewrite section 668.11 to require reminders by opposing counsel. *See Goche v. WMG, L.C.*, 970 N.W.2d 860, 866 (Iowa 2022) ("[I]t is not our role to rewrite the Iowa statute in the guise of interpretation."). We decline to make opposing counsel his "brother's keeper." *See Kirlin*, 19 N.W.3d at 114; *Stanton*, 2020 WL 4498884, at *4 n.3. Lawyers need not serve as a tickler system for their adversary's expert deadlines. To the contrary, "[a]n attorney is an advocate whose duty is to zealously represent his client to the best of his ability. An attorney's duties are to his client not to the adverse party." *Halberstam v. Cokeley*, 872 P.2d 109, 112 (Wyo. 1994) (citation omitted) (holding opposing counsel's failure to notify counsel of service of process was not good cause for setting aside default judgment); *cf. Sharp v. Broadway Nat. Bank*, 784 S.W.2d 669, 671–72 (Tex. 1990) (per curiam) ("[A] party has no duty to remind another party to abide by the Rules of Civil Procedure.").

The district court misinterpreted section 668.11 in its conclusion that SMC's silence excused the Wilsons' three-month deviation from the statutory expert certification deadline. The district court's error of law constitutes an abuse of discretion. *See Whitley*, 816 N.W.2d at 389 n.6. The Wilsons failed to establish good cause for their delay, and Beerman is therefore prohibited from testifying.[3] SMC is entitled to summary judgment if expert testimony is required. *See Struck*, 973 N.W.2d at 543–44. The district court did not reach that issue, and we decline to decide it in the first instance on appeal. *See Plowman v. Fort Madison Cmty. Hosp.*, 896 N.W.2d 393, 413 (Iowa 2017) ("A supreme court is 'a court of review,

---

[3]Because we resolve this appeal under Iowa Code section 668.11, we need not consider whether the Wilsons' expert should be barred from testifying for noncompliance with Iowa Rule of Civil Procedure 1.500(2).

not of first view.' " (quoting *Cutter v. Wilkinson*, 544 U.S. 709, 718 n.7 (2005))). SMC agrees the issue is not before us. On remand, the district court should decide in further proceedings whether the Wilsons' claims fail as a matter of law without expert testimony.

**IV. Disposition.**

For the foregoing reasons, we vacate the decision of the court of appeals and reverse the judgment of the district court denying summary judgment. We remand the case for the district court to determine whether the Wilsons need expert testimony to survive summary judgment.

**Decision of Court of Appeals Vacated; District Court Judgment Reversed and Case Remanded with Instructions.**

Oxley, McDermott, and May, JJ., join this opinion. Mansfield, J., files a dissenting opinion, in which Christensen, C.J., and McDonald, J., join.

**Mansfield, Justice (dissenting).**

I respectfully dissent and would affirm the district court's well-reasoned order.

In my view, the district court acted within its "broad discretion," *Kirlin v. Monaster*, 19 N.W.3d 108, 113 (Iowa 2025) (quoting *Donovan v. State*, 445 N.W.2d 763, 766 (Iowa 1989)), when it gave the plaintiffs additional time to file an Iowa Code section 668.11 (2021) designation for their expert. Notably, this was the same expert whom the plaintiffs had timely and appropriately disclosed in their section 147.140 certificate of merit affidavit and their Iowa Rule of Civil Procedure 1.508 expert interrogatory answers. As a sanction for failing to duplicate information that they had already provided, the majority reverses the court of appeals and the district court and dismisses the plaintiffs' case. So much for disposing of cases on the merits. *See Hantsbarger v. Coffin*, 501 N.W.2d 501, 504 (Iowa 1993) (en banc) ("[O]ur objective is to dispose of cases on the merits.").

**I. Facts and Procedural Background.**

The Wilsons filed this action on December 27, 2021, over a fall suffered by Douglas Wilson at the Shenandoah Medical Center (SMC) on December 30, 2019. SMC answered the petition on January 20, 2022. On February 1, the Wilsons filed a section 147.140 certificate of merit affidavit. The certificate of merit affidavit was executed under oath by registered nurse Jenny Beerman, who opined that SMC had breached the standard of care.

On March 1, the parties filed their stipulated trial scheduling order and discovery plan. As noted by the majority, the Wilsons proposed a September 1 deadline for their expert disclosures, which was reflected in the trial scheduling order and discovery plan.

However, the parties could not reach agreement on the trial date itself. On March 8, SMC filed a resisted motion to postpone the trial until July 23–29, 2024—i.e., over two years away. SMC's request had to be supported by good cause. *See* Iowa Court Rule 23.2(2) (requiring a showing of "good cause" to exceed the time standards in rule 23.2(1)). SMC represented as follows:

> Defense counsels' trial calendars do not permit an earlier trial date. As the Court is aware, the COVID-19 pandemic caused numerous trials originally scheduled in 2020 and 2021 to be continued. As a result, trial dates for the court and counsel are at a premium, as cases from approximately 9 months are being reset (and new cases continue to be filed). The courts and counsel are endeavoring to process cases in the most efficient and timely manner as is possible. In addition, this is a medical malpractice case. There will be a number of experts designated by the parties. Completing discovery, including expert designations and expert discovery, will require a substantial amount of time, which further supports a trial date within the extension timeline of a complex civil case under Rule 23.2(2).

(Footnote omitted.)

Several things about this paragraph should be noted. First, SMC apparently wanted a date that would work for more than one defense counsel on its team, i.e., "counsels" and "calendars." Second, contrary to the majority's assertion, SMC didn't blame a backlog caused by the COVID-19 pandemic except in a general sense, claiming that "trial dates for the court and counsel are at a premium." Lastly, and most importantly, SMC represented that completing discovery, "*including expert designations*," would "require a substantial amount of time." (Emphasis added.) This, in turn, according to SMC, would "support[] a trial date within the extension timeline of a complex civil case under Rule 23.2(2)."

On March 29, the district court found good cause and granted SMC's request for a July 2024 trial date.

On June 13, the Wilsons served interrogatory answers indicating that Beerman would also be their testifying expert. However, as the majority points out, September 1 came and went, and the Wilsons neglected to file a section 668.11 expert designation stating the same thing.

On November 30, SMC filed a summary judgment motion asking for the case to be dismissed because the Wilsons had not made a timely section 668.11 designation. Two days later, with the trial date still over a year and a half away, the Wilsons filed a section 668.11 designation of Beerman as their testifying expert.

**II. The Majority's Analytical Errors.**

As I noted earlier, our objective is to dispose of cases on the merits. Reading the majority opinion, though, one might think that our aim is to clear out the docket and hold as few trials as possible.

For starters, one might ask, "Has this court ever reversed a trial court for granting additional time under section 668.11?" The answer would be, "Until today, never."

Our caselaw has repeatedly stressed that several factors enter into the good cause analysis. We reviewed these factors earlier this year in *Kirlin. See* 19 N.W.3d at 114–15. These factors include the plaintiff's diligence and explanation for the delay, the seriousness of the deviation, prejudice to the defendant, and defense counsel's actions. *Id.* In *Kirlin*, we went through the prior caselaw carefully to demonstrate that it supported that multi-factor analysis. *Id.* at 114; *see also, e.g.*, *Nedved v. Welch*, 585 N.W.2d 238, 240–41 (Iowa 1998) (per curiam) (identifying "the questionable reason given for the delay" and "lack of prejudice" as factors to consider); *Hantsbarger*, 501 N.W.2d at 505 ("In determining whether good cause exists for granting plaintiffs' request to be excused from complying with the section 668.11 time limit, we believe the district court could have

properly considered the seriousness of the deviation and defendant's prejudice or lack thereof."); *Hill v. McCartney*, 590 N.W.2d 52, 55 (Iowa Ct. App. 1998) ("In determining whether good cause exists for granting plaintiff's request to be excused from complying with the section 668.11 time limit, the court considers three factors: (1) the seriousness of the deviation; (2) the prejudice to the defendant; and (3) defendant's counsel's actions.").

While we have upheld a trial court's discretion to *deny* additional time when the plaintiff didn't give a convincing explanation for the delay, *see Nedved*, 585 N.W.2d at 240–41; *Donovan*, 445 N.W.2d at 766, we have never held that such an explanation is a precondition to *granting* additional time.

This makes sense given the elasticity of the good cause standard. Good cause requires "more than an excuse" or "negligence," but "excusable neglect" is enough. *Nedved*, 585 N.W.2d at 240 (quoting *Donovan*, 445 N.W.2d at 766). A "misunderstanding" is also enough. *Id.* (quoting *Donovan*, 445 N.W.2d at 766).

Applying the factors that we recently reiterated in *Kirlin*, I would find good cause here. First, the representation made by SMC's counsel that completing expert designations will require "a substantial amount of time" when it sought a trial date more than two years away gave the Wilsons' counsel some justification to conclude that SMC wasn't going to insist on the September 1 deadline. This was, to put it simply, a misunderstanding.

Second, the deviation was *not* serious. The majority performs a simplistic counting of the days elapsed after the September 1 deadline. But earlier this year, we said that such an approach "reads 'deviation' too narrowly." *Kirlin*, 19 N.W.3d at 115. Section 668.11 requires only "substantial compliance, which is compliance in respect to essential matters necessary to assure the reasonable objectives of the statute." *Nedved*, 585 N.W.2d at 240; *see also Hantsbarger*, 501 N.W.2d at 504. So we should consider the overall extent of the deviation, not just

the days. In this regard, it bears emphasis that the Wilsons provided everything required for an expert designation prior to September 1; they just didn't call it that.

In any event, three months is not much of a deviation in a case that wasn't going to trial for over a year and a half.

Third, there was no prejudice to SMC. The majority dances around this issue. In effect, the majority concedes that SMC wasn't really prejudiced, but they argue that SMC *could have been prejudiced* if the Wilsons had amended their interrogatory answer to add another expert. That approach changes our law because we consider actual prejudice, not the mere potential for prejudice. *See Kirlin*, 19 N.W.3d at 117 ("We are unable to detect any actual prejudice suffered by the defendants . . . . 'Presumed prejudice' is not the same as real prejudice.").

Fourth, as already noted, there was more than silence from SMC's counsel. Among other things, SMC's counsel represented that extensive time would be required for discovery, "including expert designations."

Finally, there is no question that the Wilsons were diligently pursuing the case.

Thus, on the whole, the district court acted well within its discretion. Unlike the majority, it faithfully applied the multi-factor approach reflected in our precedents such as *Kirlin*, *Nedved*, *Hantsbarger v. Coffin*, and *Hill v. McCartney*. This does not mean that it would have been an abuse of discretion for the district court to deny the additional time; only that no abuse occurred when it granted it. *See, e.g., State v. Williams*, 929 N.W.2d 621, 633 (Iowa 2019) (finding no abuse of discretion in declining to give a requested jury instruction while adding that "[t]his does not mean, of course, that it would have been an abuse of discretion to use [the instruction]"); *Walker v. Scofield*, 39 Iowa 666,

668 (1874) (finding no abuse of discretion in denying a continuance even though "we might have granted it, if we had originally passed upon the application").

For the reasons stated, I would affirm.

Christensen, C.J., and McDonald, J., join this dissent.